Jeffrey J. Neuman (*pro hac vice* forthcoming)
Jeff@jjnsolutions.com
JJN Solutions, LLC
9445 Brenner Ct.
Vienna, VA 22180
Telephone: (202) 549-5079

Isaac S. Crum #026510
icrum@messner.com
MESSNER REEVES LLP
7250 N. 16th St. Ste 410
Phoenix, Arizona 85020
Telephone: (602) 457-5059
Facsimile:  (303) 623-0552

*Attorneys for Crisby*
*Studio AB, and Niklas Thorin*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Crisby Studio  AB, a Swedish limited liability company, and Niklas Thorin, a Swedish resident<br><br>Plaintiffs,<br><br>v.<br><br>GoDaddy, Inc., a Delaware corporation, GoDaddy.com, LLC, a Delaware corporation, and 123-Reg Limited, a UK company,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>(Conversion, Trespass to Chattel; Breach of Auction Membership Contract; Breach of Registration Agreement; Breach of the Covenant of Good Faith and Fair Dealing as to GoDaddy Defendants; Tortious Interference with Prospective Economic Advantage as to All Defendants;  Tortious Interference with Contract; Gross Negligence, Negligence, Negligent Misrepresentation, Estoppel, Request for Injunctive Relief)<br><br>Jury Trial Demanded |

Plaintiffs Crisby Studio AB, and Niklas Thorin ("Crisby" or "Plaintiff"), by and through its attorneys, for its Complaint against defendants GoDaddy, Inc., GoDaddy LLC, and 123-Reg Limited ("Defendants") alleges as follows:

## INTRODUCTION

1.     This action arises from Defendants' breach of its various domain name registration and auction agreements by (a) co-mingling its roles as an ICANN-Accredited Registrar and its separate role as a provider of domain name auction services, (b) improperly using its role as ICANN-Accredited registrar to unilaterally misappropriate a valuable .com domain name, calor.com ("Domain Name"), from Crisby's GoDaddy registrar account more than two months after Plaintiff purchased the Domain Name from GoDaddy's auction services and registered, paid for, and began using the Domain Name through GoDaddy's separate role as an ICANN-Accredited Registrar.

2.     By this action Plaintiffs seek the immediate return of the Domain Name to Crisby's account and compensation for damages actually incurred as a direct result of GoDaddy's wrongful actions.

## PARTIES

3.     Plaintiff Crisby Studio AB is a limited liability company formed under the Country of Sweden, with a principal place of business located in Stockholm, Sweden (Reg. No. 556880-8892).

4.     Plaintiff Niklas Thorin is a Swedish citizen that currently resides in Vastra Gotaland, Sweden.

5.     Defendant GoDaddy, Inc., is a Delaware company with its principal place of business in Tempe, Arizona. Upon information and belief, GoDaddy Inc., has two distinct and separate roles relevant to this dispute.  First, it operates an ICANN-Accredited domain name registrar under an agreement with the Internet Corporation Names for Assigned Names and Numbers ("ICANN").  In this capacity, Defendant either itself, or through its subsidiaries, registers and renews domain names on behalf of its customers.  This includes the management of the domain name records associated with the domain names that they register.  Separate and apart from its role as a ICANN-Accredited registrar, Defendant GoDaddy also offers domain name aftermarket services

to enable the purchase and sale of previously registered domain names through an online auction, an offer/counteroffer transaction, or a "buy now" transaction (collectively "Aftermarket Services.").

6.      Defendant GoDaddy, LLC is a wholly owned subsidiary of GoDaddy, Inc. It is registered in Delaware with its principal place of business in Tempe, Arizona.  Upon information and belief, GoDaddy LLC, is the operating entity that manages and operates the ICANN regulated domain name registration services,  and Defendants' separate Aftermarket Services.

7.      Defendant 123-Reg Limited is a domain name registrar and is upon information and belief, wholly owned by either Defendant GoDaddy, Inc. or Defendant GoDaddy, LLC, and according to its website, http://123-reg.co.uk,  has its registered office in Middlesex, England.


## JURISDICTION AND VENUE

8.      This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. Defendants GoDaddy, Inc. and GoDaddy.com LLC (collectively, "GoDaddy") are registered in Delaware with their principal place of business in Arizona. Defendant 123-Reg Limited is wholly owned by GoDaddy and has a registered office in England. Plaintiffs are an "Aktiebolag", which is roughly equivalent to a Swedish limited liability company,  registered in Stockholm, Sweden, and a person in residing in Vastra Gotaland, Sweden. Further, the amount in controversy exceeds $75,000.

9.      Venue is proper in the District of Arizona pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because it is the judicial district in which the defendants have their principal place of business and/or in which the events or omission giving rise to the claim occurred.

**BACKGROUND**

10. Defendants' Registrar Services Defendant GoDaddy, LLC is a domain name registrar accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN") to provide domain name registration services. More specifically, ICANN defines a "registrar" as an organization through which individuals and entities (registrants) register domain name[1] "During the registration process, a registrar verifies that the requested domain name meets registry requirements, and submits the name to the appropriate registry operator. Registrars are also responsible for collecting required information from registrants and making the information available through WHOIS. After registration, registrants can make updates to their domain name settings through their registrars."[2]

11. An ICANN-Accredited Registrar is one that has entered into a Registrar Accreditation Agreement ("RAA") with ICANN.[3] In order to serve as a registrar for any gTLD (including .com), registrars must be ICANN Accredited. The RAA sets for the terms and conditions by which registrars may register, renew and/or delete domain names. In addition, it also sets forth the minimum standards for the performance of registration functions, which not only includes registration services, but also the maintenance and modification of domain name records associated with domain names (eg., adding Name Server records to point to websites, or MX records to point to e-mail accounts, etc.).

12. ICANN-Accredited registrars may, and often do, provide other value-added services which are not generally regulated by ICANN through the, including website hosting, e-mail services, and domain name after market services. However, the offering of these services is not in their registrar capacity, but rather in their separate capacities as a website hosting, e-mail, and aftermarket service providers.

---

[1] See definition of "registrar" at https://www.icann.org/en/icann-acronyms-and-terms?nav-letter=r&page=1.

[2] *Id.*

[3] *Id.*

4

13.     An illustration of this distinction is that ICANN does have certain requirements with respect to the expiration of domain names.  It requires that (a) registrars list in a public WHOIS database the expiration date of a domain name registration, (b) registrars must delete a domain name within 45 days of either the registrar or the registrant terminating a registration record[4], (c) registrars must provide notice to registrants about their deletion and auto-renew policies, and (d) the circumstances by which a domain name can be redeemed by the registrant after expiration of the domain name.  However, ICANN does not regulate how aftermarket services are offered, so long as they are consistent with the ICANN-Agreement.  In other words, those that are offering aftermarket services, like Defendants', are not doing so in their role as an ICANN-accredited registrar, but rather as a separate and distinct aftermarket service provider.

A.     Defendants' Expiring Domains Auction Service

14.     Upon information and belief, the previous owner of the Domin Name, Calor Gas Ltd, located in the United Kingdom.  It was registered using the domain name registrar, 123-Reg Limited (123 Reg).

15.     123 Reg was acquired by GoDaddy in 2017 as part of GoDaddy's purchase of 123 Reg's parent company, Host Entertainment Group.

16.     123 Reg describes the process it follows when a domain name expires at https://www.123-reg.co.uk/support/domains/what-is-the-domain-recovery-period-and-how-can-i-restore-my-domain-names/, set forth as Ex. A.

17.     More specifically, 123 Reg will try to auto-renew at the standard renewal price for up to fifteen (15) days after a domain name expires provided that the domain name registrar has been paid by the domain name registrant.  *Id.*

18.     If the domain name has not been renewed during that time period, the "domain will be auctioned" by 123 Reg's auction service provider *Id.*  Although an

---

[4] See Expired Domain Deletion Policy, currently at
https://www.icann.org/resources/pages/registars/accreditation/eddp-en

auction will begin on the domain name, the existing registrant will be allowed to recover the domain name at the standard renewal price.

19.     If the domain name has not been renewed within thirty (30) days after the expiration of the domain name, the "Domain is not recoverable" by the registrant. "This timeframe is reserved for auction bids and backorders."

20.     If there are no bids on the domain name in the auction, or if there are no "backorders" on the domain name, the domain name will enter a "Redemption Grace Period" and can be recovered by the original registrant, an additional redemption fee will apply.

21.     As 123 Reg is owned by Defendant, expired domain names that are auctioned use the GoDaddy aftermarket auction system, a marketplace designed for the buying and selling of previously owned or expired domain names.

22.     As an expired domain aftermarket service provider, Defendant's auction platform is housed at http://auctions.godaddy.com. According to Defendant's website, expired auctions last for ten (10) days.[5] "Once a bid is placed, the registrant can no longer renew the domain in their account." *Id.*

B.     Calor.com

23.     Upon information and belief, the Domain Name Calor.com had an expiration date of February 25, 2024, and was allowed to expire.

24.     Upon information and belief, the Domain Name was not renewed by the then-current registrant within fifteen (15) days after the expiration date. In accordance with Defendant 123 Reg's policy, the domain name was placed into the Defendant GoDaddy's auction platform on or about March 10, 2024.

25.     On or about March 26, 2024, thirty (30) days after the Domain Name expired, the Domain Name registrant for Calor.com was changed to "Afternic, LLC", the registrant's name Defendant GoDaddy uses to indicate that the domain name is no longer

---

[5] See https://www.godaddy.com/help/listing-types-for-godaddy-auctions-1525, which is also attached as Ex. B.

recoverable by the registrant, as described in ¶ 22 above. Ex. C shows the WHOIS record from March 31, 2024.

26. Plaintiff Niklas Thorin (GoDaddy Customer number 41750938) placed a bid on the Domain Name for $11,405.00 ("Auction Bid Price") on or about March 31, 2024.

27. On or about April 4, 2024, Plaintiff Thorin was notified that "the winning bidder of **Item Number 548251391**, **calor.com**, did not complete this transaction." (emphasis in original). See Ex. D. As the second highest bidder for the Domain Name, Plaintiff was declared the new winner of the Domain Name provided that it completed the purchase of the Domain Name through the auction service platform and renewed the domain name through Defendants' registrar system within 24 hours of being notified. *Id.*

28. On April 5, 2024, Plaintiff Thorin made the required payment $11,427.17 (which included the Auction Bid Price payable to Defendants' auction service provider, plus the price of the Domain Name renewal payable to Defendants' registrar service provider ($22.17). Confirmation of Plaintiff's payment was e-mailed to Plaintiff immediately after completing the order from Defendant. See Ex. E. The confirmation states: "Thank you for your order, Niklas. Here is your confirmation for order number 2987847541. Review your receipt and get started using *your* products." *Id.* (*emphasis added*). The receipt identifies the Domain Name purchased as calor.com.

29. At some point between April 5, 2024, and April 10, 2024, consistent with Plaintiffs' ownership of the Domain Name. Plaintiffs changed the DNS records of the Domain Name through Defendants' registrar service platform to point to the IP address 162.19.152.159, which upon information and belief is operated by ClouDNS. Operating out of Bulgaria. This change allowed the Domain Name to resolve to the website content set forth in Ex. F. The Website contains an Orange/Pink background with the word "CALOR" in a stylized font, followed by the Spanish words "Encuenta el Calor del Amor" (which loosely translates to "Find the Heat of Love" in English. It then, in Spanish, invites users to send an email to  beta@calor.com to access the service earlier. Plaintiffs

subsequently modified the website to state that the owner of the domain name is Plaintiff's Swedish Company. See Exhibit G. The Domain Name continues to resolve to this Website owned by Plaintiff as of the date of the filing of this Complaint.

30. On or about that same time frame (between April 5, 2024, and April 10, 2024), Plaintiffs activated e-mail on the Domain Name by adding the "MX Records" of its e-mail provider, Migadu, a Swiss company. Those MX records continue to be present in the DNS Records for the Domain Name as of the date of the filing of this Complaint. See Ex. H.

31. On May 27, 2024, Plaintiffs executed a Joint Venture Agreement ("JV Agreement") with QLSC Consulting S.R.L., a Romanian company with its principal office located at Str. Dristorului, m Sector 3, Municipuil Cucuresti ("QLSC") for the purpose of developing and launching a dating app targeting the global Spanish-speaking market, to be named after Plaintiff's .com domain name, CALOR. In Spanish, the term "Calor" translated to "Heat" or "Hot" in English.

32. As part of the JV Agreement, Plaintiffs had to agree to a standard warranty, namely that it "currently owns the domain name 'Calor.com'". Plaintiffs also had to agree to the transfer of ownership of the domain name to the Joint Venture upon the achievement of certain milestones set forth in the JV Agreement. Until such transfer, Plaintiffs contractually committed to "maintain ownership and control of the domain name."

33. On May 29, 2024, a Sales Manager for Defendant reached out to Plaintiff Thorin via e-mail stating that they "recently had a client request our assistance in potentially acquiring the above domain which appears to be owned/ registered to you. If you would please confirm that you are still the registrant of this domain, and whether you would be open to discussing the sale of this domain. I would greatly appreciate it. If you are open to selling the domain, can you please provide me with a ballpark figure that you would be willing to consider selling it for?" See Ex. I.

34. Later that same day, Plaintiff Thorin responded to Defendant putting in on notice that (a) it was already using the Domain Name to launch a project in early 2025,

and that (b) it would only be willing to sell the domain name to Defendant's client for a high six-figure amount." See Ex. J.

35. On June 4, 2024, just one day short of two (2) months after Plaintiff paid-for and took ownership of the Domain Name, and more than one hundred (100) days after the domain name expired for the previous registrant, Plaintiff received an e-mail from Defendant's "CEO Team" stating that "[D]ue to an unexpected error, the domain calor.com should not have been available for your purchase. To correct this error, we have removed the domain from your account and are taking proactive steps to prevent this error from happening again in the future. We have refunded your original purchase and have added a $350 in-store credit to your account for the inconvenience." See Ex. K.

36. Despite the fact that Defendant had actual knowledge that (i) Plaintiffs were the rightful owners of the Domain Name, (ii) Plaintiffs were already using the Domain Name for a large project dependent on the Domain Name, (iii) the commercial launch of the services was already planned to be launched in early 2025, and (iv) in response to Defendant's own sales agent's offer to purchase the Domain Name, Plaintiffs were unwilling to do so unless Plaintiffs were compensated for the loss of their business, Defendant unilaterally removed the Domain Name from Plaintiffs' GoDaddy registrar account thereby removing Plaintiffs' ability to use the Domain Name.

37. The removal of the Domain Name from Plaintiffs' registrar account not only meant the loss and control of Plaintiffs' property, but also put Plaintiffs in breach of the JV Agreement that was executed with QLSC. As a direct result of Defendant's wrongful taking of Plaintiffs' property, Defendant caused QLSC to terminate the JV Agreement with Plaintiff and significantly damaged the reputation of Plaintiffs and the relationship with QLSC.

38. On June 17, 2024, Plaintiffs through their counsel sent a letter to Defendants' Auction Disputes Team, Defendants' CEOTeam, and its legal department notifying Defendants of their breaches of contracts and requested the immediate reinstatement of the domain name to Plaintiffs, a detailed written explanation for

Defendants' actions in this matter, and compensation for damages incurred ("June 17th Letter"). See Ex. L.

39. When no substantive response was received by Plaintiffs to the Letter, on July 17, 2024, a follow up letter was sent by Plaintiffs through their counsel repeating its requests from the June 17th Letter. See Ex. M.

40. Finally on July 18, 2024, Defendants responded to Plaintiffs' essentially restating what it said on June 4, 2024. Defendants provided no further detail on the nature of their "error", nor did Defendants return the Domain Name they misappropriated from Plaintiffs.

## FIRST CLAIM FOR RELIEF
### (CONVERSION)

41. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 40 above and incorporate them by reference.

42. On April 5, 2024, Plaintiffs became the rightful owner of the Domain Name and had the right to possess the Domain Name which was ultimately misappropriated by Defendants. It completed the purchase of the domain name through Defendants' auction service as well as a required one-year renewal through Defendants' registrar.

43. On May 29, 2024, in an e-mail from Defendants' domain name aftermarket service provider, Defendants acknowledged that Plaintiffs were indeed the rightful owner to the Domain Name and made an offer to Plaintiffs to purchase the Domain Name.

44. On the same day, Plaintiff Thorin responded to Defendant's sales agent that it had already put the Domain Name to use and was working on a commercial launch of a product using that Domain Name. Plaintiff Thorin told Defendant that he and his company, Plaintiff Crisby, would have to be compensated an amount in the "high six figures" in order to consider another domain name for the project.

45. Apparently not satisfied with Plaintiff's Thorin's response, on June 4, 2024, (more than 100 days from the date the Domain Name expired, and sixty (60) days after Plaintiff purchased the Domain Name via Defendant's auction system, Defendant

10

intentionally exercised dominion and control over Plaintiffs' property through its domain name registrar services when it wrongfully took possession of the Domain Name. Defendant deprived Plaintiffs of possession and use of the property. See Ex. K.

46. Defendant's misappropriation damages Plaintiffs in an amount to be proven at trial, but that exceeds $75,000.

## SECOND CLAIM FOR RELIEF
## (TRESSPASS TO CHATTEL)

47. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 46 above and incorporate them by reference.

48. On April 5, 2024, Plaintiffs became the rightful owner of the Domain Name and had the right to possess the Domain Name which was ultimately misappropriated by Defendants. It completed the purchase of the domain name through Defendants' auction service as well as a required one-year renewal through Defendants' registrar.

49. On May 29, 2024, in an e-mail from Defendants' domain name aftermarket service provider, Defendants acknowledged that Plaintiffs were indeed the rightful owner to the Domain Name and made an offer to Plaintiffs to purchase the Domain Name.

50. On the same day, Plaintiff Thorin responded to Defendant's sales agent that it had already put the Domain Name to use and was working on a commercial launch of a product using that Domain Name. Plaintiff Thorin told Defendant that he and his company, Plaintiff Crisby, would have to be compensated an amount in the "high six figures" in order to consider another domain name for the project.

51. Apparently not satisfied with Plaintiff's Thorin's response, on June 4, 2024, (more than 100 days from the date the Domain Name expired, and sixty (60) days after Plaintiff purchased the Domain Name via Defendant's auction system, Defendant intentionally dispossessed Plaintiffs of the domain name by inappropriately leveraging its domain name registrar services to seize control of the domain name. In so doing, Defendant deprived Plaintiffs of possession and use of the property. See Ex. K.

52.     Defendants dispossessed Plaintiffs of their domain name by inappropriately filing transfer information with ICANN and updating the WHOIS registry to reflect that Plaintiffs were no longer the owners of the Domain Name.

53.     Defendant's actions damages Plaintiffs in an amount to be proven at trial, but that exceeds $75,000.

## THIRD CLAIM FOR RELIEF
### (BREACH OF AUCTION MEMBERSHIP CONTRACT)

54.     Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 53 above and incorporate them by reference.

55.     Plaintiffs entered into an "Auction Membership Agreement" with Defendants (as a provider of domain name auction services) as of the date in which it placed a bid on the Calor.com domain name ("AMA").  See Ex. N.  Under the AMA, Defendant, as an aftermarket service provider, facilitates the buying and selling of currently registered domain name, including those domain names in their expiration period.

56.     The AMA requires that for an expired domain name auction to be completed, the winning bidder (called the "Buyer" in the AMA), must pay the winning bid amount plus a one (1) year renewal fee.  Once that is completed, "Change of ownership will begin upon the completion of the check-out process and receipt of Buyer's funds."  See *Id.*

57.     On April 5, 2024, Plaintiff made the required payment $11,427.17 (which included the Auction Bid Price plus the price of the Domain Name renewal ($22.17). April 5, 2024, was approximately 41 days after the expiration of the Domain Name.

58.     On that same day the transfer of the Domain Name to Plaintiff was complete and placed into Plaintiffs' GoDaddy *registrar* account.

59.     On June 4, 2024, More than 100 days after the domain name expired, and nearly two months after Plaintiff acquired the domain name, Defendant breached the AMA by nullifying the result of the Domain Name purchase.

60.     Defendant knew or should have known whether it had the right to offer the Domain Name for sale on its own auction platform.   At the time that Plaintiff purchased the domain name, Defendant knew or should have known whether it had the right to collect fees for the Domain Name.  More importantly, at the time Defendant transferred ownership of the Domain Name to Plaintiff, it knew or should have known whether it had the right to transfer ownership of the Domain Name.

61.     Defendant had a process by which the previous owner could have reclaimed the expired domain name so long as that was done within 45 days after the expiration.  Defendant did not follow its own process, which also is a breach of the AMA.

62.     As a result of these multiple breaches of the AMA, Plaintiff has suffered damages in an amount to be proven at trial, but that exceeds $150,000.

### FOURTH CLAIM FOR RELIEF
### (BREACH OF REGISTRATION AGREEMENT)

63.     Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 55 above and incorporate them by reference.

64.     At the moment the Domain Name transferred to Plaintiff and was renewed for an additional one (1) year, services under the AMA were completed and Plaintiff's relationship with Defendants was solely under the Domain Name Registration Agreement ("DNRA"), currently set forth at https://www.godaddy.com/legal/agreements/domain-name-registration-agreement, and attached hereto at Exhibit O.

65.     The DNRA does not provide a mechanism for Defendant, as a Registrar, to deny, cancel or transfer any renewal of a domain name, for an error committed by an expired domain name auction provider.

66.     By removing the Domain Name from Plaintiff's registrar account due to an "error" committed by it as an auction service provider, Defendant breached the

DNRA. Although Defendants are both a registrar and an auction service provider, there is nothing in the DNRA that allows Defendants to use their position as a domain name registrar to correct errors by them performing non-registrar services (here, auction services).

67. As a result of this breach of the DNRA, Plaintiff has suffered damages in an amount to be proven at trial, but that exceeds $150,000.

**FIFTH CLAIM FOR RELIEF**
**(BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO GODADDY DEFENDANTS)**

68. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 67 above and incorporate them by reference.

69. At least two contracts existed between Defendant and Plaintiff. The first of which was the AMA for the auction services, and the second, Defendants' domain name registration agreement (DNRA).

70. Pursuant to those contracts, Plaintiff expected Defendant would comply with its fiduciary duties, perform its professional obligations as an ICANN-Accredited registrar, separate and apart from its role as a provider of other non-registrar services, without impairing the businesses of Plaintiff, and not convert Plaintiff's property, opportunities, interests and expectancies for Plaintiff's use of the Domain Name.

71. Pursuant to those contracts, Plaintiff expected Defendant would comply with its fiduciary duties, and not comingle its non-registrar services with it serving as an ICANN-Accredited registrar, As a result of this breach of the covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial, but that exceeds $150,000.

14

## SIXTH CLAIM FOR RELIEF
## (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AS TO ALL DEFENDANTS)

72. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 71above and incorporate them by reference.

73. Defendants actively market their domain name registrar as one where you can connect "your Websites + Marketing site to a domain . . . [within] . . . a few minutes but can take up to 72 hours."

74. In fact, on April 5, 2024, in the receipt received by Plaintiff, Defendant expressly tell Plaintiff to "Activate your products today. You have new products or services in your account waiting to be activated. You've paid for them – now put them to work." See Ex. E.

75. Defendant not only knows that many businesses begin using their domain names immediately upon registering a domain name, but it actively markets this feature of its system.

76. Defendant knew or reasonably should have known that Plaintiff had set up MX Records on the Domain Name indicating that Defendant had been using the Domain Name for conducting business via e-mail.

77. Defendant's conduct has damaged Plaintiffs in an amount to be proven at trial, but not less than $150,000.

## SEVENTH CLAIM FOR RELIEF
## (TOURTOUS INTERFERENCE WITH CONTRACT)

78. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 78 above and incorporate them by reference.

79. A contract existed between Plaintiff and QLSC to create a dating application based entirely on the Domain Name.

80. Defendant was made aware of the fact that the Domain Name was going to be used to launch a new product or service on May 29, 2024, when it inquired about purchasing the Domain Name for a "client".

15

81.     Defendant intentionally interfered with the contract between Plaintiff and QLSC causing Plaintiff to breach that contract.

82.     Defendant acted improperly when it unilaterally converted Plaintiff's property.

83.     As a result of Defendant's conduct, Plaintiff was damaged, in an amount to be proven at trial, but at least $150.000.

### EIGHTH CLAIM FOR RELIEF
### (GROSS NEGLIGENCE)

84.     Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 83 above and incorporate them by reference.

85.     Defendants owed Plaintiff a duty of care to ensure that domain name auctions are properly conducted and that the sale of domain names as a result of such auctions are final and without error.

86.     Defendants breached this duty by not only negligently auctioning off a domain name that it claims should not have been auctioned, but also by recklessly allowing two (2) months to pass before informing Plaintiff of the alleged "error" and misappropriating the Domain.

87.     Defendants' actions, in allowing such a significant period to elapse before reclaiming the domain, constitute gross negligence, demonstrating a reckless disregard for the rights and interests of Plaintiffs.

88.     As a direct and proximate result of Defendants' gross negligence, Plaintiff has suffered significant harm, including but not limited to: (a) the loss of the Domain Name, (b) costs incurred in developing and promoting the Domain Name during the two month period in which it owned the Domain Name, (c) business disruption and loss of potential revenue, and (d) reputational damage and loss of business opportunities.

89.     As a result of Defendant's gross negligence, Plaintiff was damaged in an amount to be proven at trial, but at least $150,000.00.

## NINTH CLAIM FOR RELIEF
### (NEGLIGENCE)

90.     Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 89 above and incorporate them by reference.

91.     Defendants owed Plaintiff a duty of care to ensure that domain name auctions are properly conducted and that the sale of domain names as a result of such auctions are final and without error.

92.     Defendants breached this duty by negligently auctioning off a domain name that it claims should not have been auctioned, and by failing to adequately verify the eligibility of the domain name for auction before offering it for sale.

93.     As a direct and proximate result of Defendants' negligence, Plaintiff has suffered significant harm, including but not limited to: (a) the loss of the Domain Name, (b) costs incurred in developing and promoting the Domain Name during the two month period in which it owned the Domain Name, (c) business disruption and loss of potential revenue, and (d) reputational damage and loss of business opportunities.

94.      As a result of Defendant's negligence, Plaintiff was damaged in an amount to be proven at trial, but at least $150,000.00.

## TENTH CLAIM FOR RELIEF
### (NEGLIGENT MISREPRESENTATION)

95.     Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 86 above and incorporate them by reference.

96.     By placing the Domain Name up for auction through Defendant's aftermarket services, Defendant represented that it had the right to sell the Domain Name to anyone that placed bids on the Domain Name.

97.     By declaring Plaintiff, the winner of the auction for the Domain Name, and requesting payment for the Domain Name, Defendant again was representing that it has the right to sell the Domain Name to Plaintiff, and that upon payment of the purchase price, Defendant had the right to transfer title of the Domain Name to Plaintiff.

98. Upon Defendant's own admission, Defendant failed to exercise reasonable care in securing the appropriate rights to sell and transfer the Domain Name to Plaintiff

99. Plaintiff justifiably relied on Defendant's authority and ability to see the Domain Name to Plaintiff.

100. As a result of Defendant's negligence, Plaintiff was damaged in an amount to be proven at trial, but at least $150,000.00.

**ELEVENTH CLAIM FOR RELIEF**
**(ESTOPPEL)**

101. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 100 above and incorporate them by reference.

102. Defendant intentionally induced Plaintiff to believe and have confidence that it was selling the Domain Name to Plaintiff.

103. Upon consummating the sale of the Domain Name to Plaintiff, Defendant intentionally induced Plaintiff to believe and have confidence that Plaintiff had owned all right, title, and interest in and to the Domain Name. This was a material fact.

104. Plaintiff justifiably relied on Defendant's authority to sell the Domain Name, and to transfer all right, title and interest to the Plaintiff.

105. Plaintiffs were injured and damaged as a result of the reliance cause by Defendant, in an amount to be proven at trial but not less than $150,000.

**TWELFTH CLAIM FOR RELIEF**
**(INJUNCTIVE RELIEF)**

106. Plaintiffs hereby restate and re-allege the allegations set forth in paragraphs 1 through 87 above and incorporate them by reference.

107. Pursuant to A.R.S. s. 12-1801, the Court has the authority to grant injunctive relief.

108.    Plaintiffs have suffered irreparable injury or there is a substantial likelihood that they will continue to suffer substantial irreparable injury as a result of Defendant's conversion and misappropriation of Plaintiff's property.

109.    Upon information and belief, Defendant's will attempt to aid further conversion and/or misappropriation of Plaintiff's Domain Name if they are not enjoined from selling and/or transferring the Domain Name to a third party.

110.    Plaintiff has no adequate remedy at law to protect its property from being further misappropriated by Defendant if the Defendants are not restrained.

111.    The misappropriation of the Domain Name to a third party would constitute an irreparable injury, with incalculable damages for Plaintiff.

112.    Plaintiff is entitled to a temporary restraining order and permanent injunction against Defendants.

WHEREFORE, Plaintiff is entitled to and prays that the court enter a temporary restraining order and permanent injunction against Defendants ordering the following:

(a) That the Defendants be enjoined from allowing any modifications or changes to the Domain Name registration information during the pendency of this litigation.  This includes not allowing the Domain Name to be deleted or transferred to any third party.

(b) That Defendants shall not be allowed to tamper with or interfere with, in any fashion, Plaintiff's use of the Domain Name.

(c) That Defendants do not interfere with Plaintiff's ongoing business.

## PUNITIVE DAMAGES

113.    Defendants engaged in conduct, acts, and omissions to serve their own interests and pursued a course of conduct having reason to know of, yet consciously disregarding a substantial right that such conduct might significantly injure the rights of Plaintiff.  The willful and intentional acts, as set forth in this complaint are of such an

aggravated or outrageous nature to indicate motive by an evil mind, coupled with an evil hand.

114.    In addition, Defendants intentionally co-mingled its services as a domain name auction provider or aftermarket services with that of an ICANN-Accredited Registrar that provides critical domain name registration services to third parties.  As the largest ICANN-Accredited Registrar, Defendant believes that it can engage in self-help by using its separate domain name registrar to "correct errors" it commits as an auction service provider and misappropriate Plaintiff's Domain Name.  In fact, if Plaintiff was aware that this was something Defendant could do, it would have transferred its Domain Name to another registrar that could not take such actions.  In other words, had Plaintiffs' purchased the domain name through Defendants' auction service, then subsequently transferred to Domain Name to a separate registrar, Defendant would not have been able to use its registrar service to convert Plaintiff's property.  If there were any errors by the auction service provider, it would have had to bring a legal action to attempt to recover the name.  Rather than following the appropriate legal course of action, Defendant abused its position as a registrar to misappropriate plaintiffs' property.

115.    Therefore, a punitive damages award against Defendant in an amount to be proven at trial is fully justified and warranted and would have the effect of deterring others from committing similar acts and omissions.

116.    Plaintiff is entitled to a temporary restraining order and permanent injunction against Defendants.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a jury trial of all issues triable to a jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

20

A. Entry of judgment in favor of Plaintiffs against Defendants

B. An order awarding Plaintiffs damages, including punitive damages as allowable, in an amount to be proven at trial, but in an amount no less than $75,000;

C. Pre-judgment and post-judgment interest;

D. An order awarding Plaintiffs its costs and attorneys' fees to the extent allowed by law.

E. A temporary restraining order enjoining Defendants GoDaddy Inc. and GoDaddy.com LLC, its officers, agents, directors, affiliates, servants, employees, and all persons acting in concert with it, from directly or indirectly allowing the calor.com domain name to expire and/or revert to the domain name registry to be generally available for purchase by third parties;

F. A temporary restraining order enjoining Defendants GoDaddy, Inc. and GoDaddy.com LLC from preventing or frustrating Plaintiffs' right, pursuant to GoDaddy's Domain Registration Agreement, to renew the registration of the Domain;

G. A temporary restraining order enjoining Defendants GoDaddy, Inc., GoDaddy.com LLC, 123-Reg Limited, their officers, agents, directors, affiliates, servants, employees, and all persons acting in concert with it (collectively "Defendants") from selling or otherwise transferring any ownership interest in the calor.com domain name, or purchasing any ownership interest in the domain, or otherwise accepting transfer of any ownership interest in the Domain Name;

H. An order to show cause why a preliminary injunction should not issue, pursuant to Fed. R. Civ. P. 65, enjoining Defendants from directly or indirectly committing the above-described acts during the pendency of this action; and

I. Granting Plaintiffs any such other and further relief as this Court deems just and proper, or that Plaintiffs may be entitled to as a matter of law or equity.

DATED:  August 23, 2024,

/s/ Isaac S. Crum
Isaac S. Crum, #026510
icrum@messner.com
MESSNER REEVES LLP
7250 N. 16th St. Ste 410
Phoenix, Arizona 85020
Telephone: (602) 457-5059
Facsimile: (303) 623-0552

Jeffrey J. Neuman (*pro hac vice*
forthcoming)
Jeff@jjnsolutions.com
JJN Solutions, LLC
9445 Brenner Ct.
Vienna, VA 22180

*Attorneys for Crisby
Studio AB, and Niklas Thorin*

## LIST OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Def. 123 Reg Domain Expiration Polcy |
| B | Def. GoDaddy Auction Website – Listing Types |
| C | March 31, 2024 WHOIS Record for Calor.com |
| D | Notification of Winning Auction Bid for Calor.com |
| E | Payment Receipt for Calor.com |
| F | June 2024 Screenshot of Calor.com |
| G | August 2024 Screenshot of Calor.com |
| H | DNS MX Record Change for Calor.com |
| I | Def. GoDaddy Sales E-mail to Plaintiff |
| J | Plaintiff Response to GoDaddy Sales E-mail |
| K | Def. Notification of Misappropriation of Calor.com |
| L | Plaintiff 6-17-24 Letter to Defendants |
| M | Plaintiff 7-17-24 Follow Up Letter to Defendants |
| N | Def. Auction Membership Agreement |
| O | Def. Domain Name Registration Agreement |