Jeffrey M. Monhait, AZ Bar No. 038707
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2084
Email:    jmonhait@cozen.com

Attorneys for Defendants
GoDaddy Inc. and GoDaddy.com, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Crisby Studio AB, a Swedish limited liability company, Niklas Thorin, a Swedish resident, and Prime Loyalty, a New York limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>GoDaddy, Inc. a Delaware corporation, GoDaddy.com, LLC, a Delaware corporation, and 123-Reg Limited, a UK company,<br><br>Defendants. | Case No.: 2:24-cv-02165-SMB<br><br>**DEFENDANTS GODADDY INC. AND GODADDY.COM, LLC'S OPPOSITION TO PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Defendants GoDaddy.com, LLC ("GoDaddy") and GoDaddy Inc. oppose Plaintiff Prime Loyalty, LLC's ("Prime") Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion") (Doc. 20). Prime alleges it purchased a domain name registration, butane.com (the "Domain"), through GoDaddy's auction services, and two months later, GoDaddy unwound the transaction because the Domain was auctioned in error. The parties' contracts expressly permit GoDaddy to take this alleged action to correct such mistakes or errors. Accordingly, GoDaddy refunded Prime the full purchase price and gave Prime $7,350 in in-store credit to reimburse Prime for other services it purchased, including two other domain registrations, butane.org and butane.net, that Prime thus received for free. Prime waited more than a month to even respond to GoDaddy, and delayed more than 3.5 months before seeking to join this action that Plaintiffs Crisby Studio AB and Niklas Thorin (together, "Crisby") had filed regarding an entirely separate domain registration. Like Crisby, Prime asserted the same scattershot claims against GoDaddy, GoDaddy Inc. (the sole member of GoDaddy's corporate grandparent, and an entity with no alleged involvement in this action), and 123-Reg Limited ("123 Reg"), the Domain registrar. In the Motion, Prime seeks to enjoin the defendants from allowing the Domain to expire or be transferred or sold.

Prime's Motion is nearly identical to Crisby's similar motion (Doc. 2) and suffers from the same fatal defects, as Prime failed to satisfy any of the required elements for injunctive relief. ***First***, the requested injunction would be ineffective because Plaintiffs have not properly served the Domain registrar, 123 Reg, or even attempted to allege a basis for personal jurisdiction over 123 Reg. ***Second***, Prime has not shown a likelihood of success on: (a) its contract claims, because the parties' contracts expressly allowed GoDaddy's alleged actions; (b) its tort claims, because (i) the economic loss rule ("ELR") bars these claims, (ii) those claims are not cognizable as a matter of law, and/or (iii) Prime cannot transform contract claims into a tort; and (c) its estoppel claim, because there are written agreements governing the parties' relationship. ***Third***, Prime failed to show an injunction is necessary to prevent irreparable harm because the purported "harm": (a) ***occurred 3.5 months before Prime tried***

1

**GODADDY INC. AND GODADDY.COM, LLC'S OPPOSITION TO PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

*to join this action*; (b) is speculative and unsupported by evidence; (c) would not be remedied by the requested relief; and (d) is compensable with money damages. **Fourth**, Prime failed to demonstrate that the balance of equities tips in its favor because an injunction would: (a) be ineffective, and thus not aid Prime; and (b) enjoin conduct over which GoDaddy and GoDaddy Inc. have no control, because the Domain is registered with 123 Reg. **Fifth**, a preliminary injunction is against the public interest because it would impede registrars from correcting errors or mistakes affecting domain registrations. The Motion must be denied.

## II. RELEVANT FACTUAL BACKGROUND

### A. Background On GoDaddy

GoDaddy is a domain name registrar, meaning it manages the reservation of Internet domain names registered through it by members of the public. *See Academy of Motion Picture Arts and Sciences v. GoDaddy.com, Inc.*, 2015 WL 5311085, at *1 (C.D. Cal. Sept. 10, 2015); *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 548 (9th Cir. 2013). GoDaddy Inc. is the sole member of GoDaddy's corporate grandparent, *see* Doc. 24, and GoDaddy Inc. is not a domain name registrar. "[T]o use a domain name in connection with a web site, the web site operator must register the name with one of a number of competing companies known as 'registrars.' Registrars accept domain name registrations on a first-come, first-served basis." *Am. Girl, LLC v. Nameview, Inc.*, 381 F. Supp. 2d 876, 879 (E.D. Wis. 2005). GoDaddy provides domain name services in connection with domains that are not registered at the time of purchase as well as domains that have been previously registered. The latter category is referred to as aftermarket domain names. One component of GoDaddy's aftermarket domain services is GoDaddy Auctions, a venue to facilitate the purchase and sale of currently registered domain names and expiring domain names. *See* Doc. 18-1, Ex. N §§ 1–2, 6. GoDaddy "is not the owner of the domain names listed" for auction, and "has no control over the quality, safety, or legality of the domain names listed." *See Id.* § 2.

### B. Prime's Allegations

Prime alleges that its owner, non-party Jeff Garbutt ("Garbutt"), is a GoDaddy customer that won an auction for the Domain with a $19,755 bid on March 31, 2024. Doc. 18 ¶¶ 36–37;

Doc. 20-1 ¶¶ 1–2, 6–8. Prime alleges that prior to the auction, Garbutt "secured" funding from non-party Mike Giordano ("Giordano") to bid on the Domain, and that they agreed to establish a "joint white-label butane business" that Giordano would manage. Doc. 18 ¶¶ 35; Doc. 20-1 ¶¶ 4–5. Prime alleges Giordano was already running a white-label butane business. *See id.* Prime alleges that on April 7, 2024, Garbutt purchased additional services, including registrations for the domain names butane.net and butane.org, for $7,024.34. Doc. 18 ¶ 38; Doc. 20-1 ¶ 9. Prime alleges that Garbutt also spent time "researching the acquisition" of butane products, and Giordano began "contractual negotiations" with his existing network for the sale of white-label butane products. Doc. 18 ¶ 38; Doc. 20-1 ¶¶ 12–13.

Prime alleges that on May 29, 2024, a GoDaddy sales manager contacted Garbutt to discuss a potential purchase of the Domain. Doc. 18 ¶ 43; Doc. 20-1 ¶ 14. In response, Garbutt stated that he "curated an entire portfolio" of domain names "in the butane space," but that he was currently "open to a Joint Venture/Partnership." Doc. 18-1 at Ex. 10; Doc. 20-1 ¶ 15. Prime alleges that on June 4, 2024, GoDaddy told Garbutt that the Domain was mistakenly listed for auction "due to an unexpected error" and should never have been auctioned. Doc. 18 ¶ 46; Doc. 20-1 ¶ 16. Prime alleges that GoDaddy removed the Domain from Garbutt's account to correct the error, and issued a full refund plus a $7,350 in-store credit to cover, among other things, the butane.net and butane.org domain names (so Garbutt thus obtained those domain registrations for free). *See id.* Garbutt waited more than a month before responding to GoDaddy. *See* Doc. 18-1 at Ex. 11.

### C. The Parties' Contracts

GoDaddy requires all customers to agree to its Universal Terms of Service Agreement ("UTOS") and other uniform agreements relating to the products or services purchased, such as the Domain Name Registration Agreement ("DNRA") for domain registration services and the Auctions Membership Agreement ("AMA") for auctions services. *See* Doc. 18-1 at Exs. E, N–O, 4-5; Doc. 26-1. It is undisputed that Prime agreed to, and is bound by, the UTOS, DNRA, and AMA. *See* Doc. 18 ¶¶ 72, 82; Doc. 20-1 ¶¶ 2, 7–8; Doc. 18-1 at Ex. N § 1 (the

1  UTOS "is incorporated [into the AMA] by reference"), Ex. O § 1 (same for the DNRA), Ex.
2  4 ("during the checkout process, you agreed to [the UTOS]"), Ex. 5 (same).

3        The UTOS and DNRA expressly permit GoDaddy to cancel or transfer a domain
4  registration to correct mistakes or errors (among other reasons). First, the UTOS provides:

> GoDaddy expressly reserves the right … to deny, cancel, terminate, suspend, lock, or modify access to (or control of) any Account or Services (including the right to cancel or transfer any domain name registration) for any reason (as determined by GoDaddy in its sole and absolute discretion), including but not limited to the following: (i) to correct mistakes made by GoDaddy in offering or delivering any Services (including any domain name registration), (ii) to protect the integrity and stability of, and correct mistakes made by, any domain name registry or registrar, …[and] (viii) to avoid any civil or criminal liability on the part of GoDaddy….

Doc. 26-1 § 15. Similarly, the DNRA provides:

> You acknowledge and agree that GoDaddy and registry reserve the right to deny, cancel or transfer any registration or transaction, or place any domain name(s) on lock, hold or similar status, as either deems necessary, in the unlimited and sole discretion of either GoDaddy or the registry: … (ii) to protect the integrity and stability of, and correct mistakes made by, any domain name registry or registrar, … [and] (vii) to avoid any liability, civil or criminal, on the part of registry operator…."

Doc. 18-1 at Ex. O § 8. Also, the AMA provides for a full refund if an "Expired Domain Name is reclaimed by the original registrant." *See* Doc 18-1 at Ex. N § 6.

      Additionally, the UTOS contains a limitation of liability provision that states, in part:

> IN NO EVENT SHALL GODADDY … BE LIABLE TO YOU … FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES WHATSOEVER, INCLUDING ANY THAT MAY RESULT FROM (I) THE ACCURACY, COMPLETENESS, OR CONTENT OF THIS SITE, … [and/or] (XI) ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF YOUR USE OF THIS SITE OR THE SERVICES FOUND AT THIS SITE, WHETHER BASED ON WARRANTY, CONTRACT, TORT, OR ANY OTHER LEGAL OR EQUITABLE THEORY, AND WHETHER OR NOT GODADDY IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES[.]

Doc. 26-1 § 20. The UTOS also expressly limits GoDaddy's total aggregate liability to $10,000. *See id.*

### D. The Domain

Prime alleges that the original registrant of the Domain was non-party Calor Gas Ltd ("Calor"), that Calor registered the Domain with 123 Reg, and that a technical error prevented Calor from renewing the Domain. *See* Doc. 18 ¶¶ 15, 55. Prime alleges that the Domain was returned to Calor (and again registered with 123 Reg) after the Domain was removed from Prime's account to correct the error in that the Domain should not have been auctioned. *See* Doc. 18 ¶¶ 15, 55. 123 Reg is a company registered in England and Wales, with its registered office in the United Kingdom ("UK"). *See* Doc. 18-1, Ex. A. 123 Reg has not been served with process and has not appeared in this action, and Prime has not identified any basis to find personal jurisdiction over 123 Reg in Arizona.

### E. The Instant Litigation

Crisby commenced this action by filing a Complaint on August 23, 2024. Doc. 1. On September 25, 2024, Crisby filed a First Amended Complaint to add Prime as a named plaintiff. Doc. 18. Prime purports to assert the same 12 claims as Crisby—even though its alleged claims arise out of a different transaction concerning a different domain name. The claims include: (a) conversion and trespass to chattel (Counts 1–2); (b) breach of contract and breach of the covenant of good faith and fair dealing (Counts 3–5); (c) tortious interference (Counts 6–7); (d) negligence claims (Counts 8–10); (e) estoppel (Count 11); and (f) a claim for injunctive relief (Count 12). *See* Doc. 18 ¶¶ 56–136.

Nearly four months after Prime alleges the Domain was removed from its account, Prime filed this Motion seeking immediate injunctive relief. *See* Doc. 20.

## III. LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotations and citation omitted); accord *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). "A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer

irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Identity Intel. Grp. LLC v. Rocket Mortg. LLC*, 2022 WL 17903681, at *2 (D. Ariz. Sept. 28, 2022) (citing *Winter*, 555 U.S. at 20).

Courts may balance these factors under a "sliding scale" approach, which allows a plaintiff to obtain an injunction where it has raised "serious questions going to the merits"— provided that plaintiff also shows "a balance of hardships that tips sharply towards the plaintiff" and "a likelihood of irreparable injury and that the injunction is in the public interest." *Dev. Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011) (internal quotations and citation omitted). The "sliding scale" approach "does not relieve the movant of the burden to satisfy all four prongs for the issuance of a preliminary injunction," *Democratic Nat'l Comm. v. Reagan*, 2018 WL 10455189, at *1 (D. Ariz. May 25, 2018), and "weakness in a plaintiff's showing of harm cannot be offset by a stronger showing on the merits of the underlying legal claim." *Doe v. Snyder*, 28 F.4th 103, 112 n.4 (9th Cir. 2022).

## IV. ARGUMENT

### A. Prime's Requested Injunctive Relief Would Be Ineffective Because The Domain Is Registered With 123 Reg

The Domain is not registered with GoDaddy or GoDaddy Inc.—the only defendants currently before the Court—and GoDaddy Inc. is not even a domain registrar. Rather, the Domain has been registered with 123 Reg since at least June 4, 2024—that is, nearly 4 months ***before*** Prime filed its Motion. *See* Request for Judicial Notice ("RJN") at Ex. 1; Doc. 18 ¶¶ 15, 55. Plaintiffs have not served 123 Reg or alleged any basis to find personal jurisdiction over 123 Reg. Accordingly, Prime's requested injunction would be ineffective because it would not be enforceable as to 123 Reg.

#### 1. Plaintiffs Have Not Properly Served 123 Reg

"A federal court may issue an injunction only 'if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.'" *Sherrill v. Ariz. Health Care Cost Containment Sys.*, 2013 WL 12122671, at *2 (D. Ariz. Apr. 24, 2013) (quoting *Zepeda v. U.S. Immigration Serv.*, 753

F.2d 719, 727 (9th Cir. 1985)). Moreover, "[a] federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4." *Id.* (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)); *accord S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007) ("[I]n the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process."); *Zosma Ventures, Inc. v. Nazari*, 2012 WL 12887392, at *5 (C.D. Cal. Mar. 14, 2012) ("service of process is a prerequisite to the issuance of an enforceable preliminary injunction").

Here, it is undisputed that Plaintiffs have not served 123 Reg with process. As a result, the Court lacks jurisdiction to enter an injunction against 123 Reg. *See, e.g.*, *Cohen v. Bokor*, 2024 WL 3330560, at *3–4 (C.D. Cal. July 8, 2024) (vacating hearing on motion for preliminary injunction until proper service of foreign defendant could be completed under the Hague Convention, and holding that absent proper service, "the Court cannot proceed to address the merits of plaintiff's motion for a preliminary injunction"); *Acolyte Techs. Corp. v. Jeja Int'l Corp.*, 2012 WL 273159, at *1 (S.D. Cal. Jan. 30, 2012) (denying motion for preliminary injunction because the plaintiff had not yet completed proper service of foreign defendant under the Hague Convention, and "injunctive relief cannot issue against any defendant absent notice (i.e. proper service)"); *see also Sherrill*, 2013 WL 12122671, at *2 (denying request for preliminary injunction because "[r]eview of the Court's docket suggests that Defendants have not been properly served"). As such, Prime's requested injunctive relief would be ineffective because it would not be enforceable as to 123 Reg.

### 2. 123 Reg Is Not Subject To Personal Jurisdiction In Arizona

Plaintiffs also failed to show that 123 Reg is subject to personal jurisdiction in this forum. "A district court lacks authority to grant a preliminary injunction when it lacks personal jurisdiction over defendants." *Viral DRM LLC v. YouTube Uploadeers Listed on Schedule A*, 2024 WL 189013, at *1 (N.D. Cal. Jan. 17, 2024) (citation omitted); *see Butte Min. PLC v. Smith*, 24 F.3d 245 (9th Cir. 1994) ("[It] would be inappropriate for a district court to enter any injunction … without first considering whether personal jurisdiction could be asserted

over the defendant."). "[P]ersonal jurisdiction is a threshold issue" for purposes of a preliminary injunction analysis. *See Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *2 (N.D. Cal. Jan. 13, 2020), *aff'd*, 2021 WL 963777 (9th Cir. Mar. 15, 2021).

Plaintiffs "bear[] the burden of "establishing the court's personal jurisdiction over a defendant." *Viral DRM LLC*, 2024 WL 189013, at *1 (internal quotations and brackets omitted) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). To make a prima facie showing on jurisdiction, the plaintiff must demonstrate jurisdictional facts "that, if true, would support jurisdiction over the defendant." *Tanga.com LLC v. Gordon*, 2015 WL 533264, at *1 (D. Ariz. Feb. 9, 2015) (citation omitted). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy" a plaintiff's burden to establish personal jurisdiction over a defendant. *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 943 (N.D. Cal. 2014) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)). Moreover, "[w]hen there are multiple defendants, the jurisdictional inquiry must decouple defendants, considering whether each individual defendant has had sufficient 'minimum contacts' with the forum state to justify an exercise of jurisdiction." *GeoSolutions B.V. v. Sina.com Online*, 700 F. Supp. 3d 821, 826–27 (N.D. Cal. 2023) (internal quotations and citation omitted). In cases involving related business entities, "a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).

123 Reg is a UK company with a UK registered office. *See* Doc. 18-1, Ex. A. Plaintiffs do not even attempt to allege that 123 Reg had sufficient contacts with Arizona to establish personal jurisdiction, and courts routinely dismiss complaints that fail to allege facts sufficient for the court to exercise personal jurisdiction.[1] Plaintiffs failed to make a prima facie showing

---

[1] *See, e.g., Epes v. Sidden*, 2023 WL 5318469, at *1 (9th Cir. Aug. 18, 2023) (no error in dismissal for lack of personal jurisdiction where the "complaint's jurisdictional allegations are facially deficient"); *Bryfogle v. Livingston*, 2022 WL 2238182, at *4 (D. Ariz. June 22, 2022) ("Plaintiff has not made a prima facie showing that the minimum contacts exist for this Court to exercise personal jurisdiction" over defendants); *Discovery Land Co. LLC v. Discovery Glob. LLC*, 2021 WL 148641, at *5 (D. Ariz. Jan. 15, 2021) ("the Court will not construe the

**GODADDY INC. AND GODADDY.COM, LLC'S OPPOSITION TO PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

that this Court has personal jurisdiction over 123 Reg (the Domain registrar). Thus, Prime's requested injunction would be ineffective.

## B. Prime Is Unlikely To Succeed On the Merits

The "most important" factor and "threshold inquiry" on an injunction request is whether the plaintiff is likely to succeed on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). "[I]f a plaintiff fails to show that he has some chance on the merits, that ends the matter." *Dev. Servs. Network*, 666 F.3d at 544. As a threshold matter, Prime failed to show a likelihood of success on (a) any claim against GoDaddy Inc., as Prime offered no factual allegations as to GoDaddy Inc., and (b) its claims for conversion, trespass to chattel, negligence, negligent misrepresentation, and estoppel, as Prime did not mention those claims in its Motion. *See* Doc. 20. Even setting that aside, Prime's claims all fail as a matter of law.

### 1. Prime Cannot Succeed On A Claim For Breach Of Contract

To prevail on a contract claim, Prime must prove: (1) the existence of a contract between Prime and the named defendants, (2) a breach of the contract by the named defendants, and (3) resulting damages to Prime. *See Gillard v. Good Earth Power AZ LLC*, 2019 WL 1280946, at *4 (D. Ariz. Mar. 19, 2019). Prime failed to identify any provision of the parties' contracts (the UTOS, AMA, or DNRA) that was purportedly breached, and that by itself is fatal to Prime's claims. *See Lowry v. EMC Mortg. Corp.*, 710 F. App'x 752 (9th Cir. 2018) (affirming dismissal of contract claim under Arizona law where plaintiffs "failed to identify a contract provision" that was breached).

Moreover, the parties' contracts ***expressly permitted*** the alleged conduct at issue. Prime alleges the Domain was removed from its account and returned to Calor to correct "an unexpected error" because the Domain should not have expired or been auctioned. *See* Doc. 18 ¶¶ 15, 46, 55; Doc. 18-1 at Exs. 11, 15. The UTOS and DNRA expressly permit GoDaddy to "cancel or transfer any domain name registration" for any reason, including, *inter alia*: (a)

---

Complaint's bare allegations… as sufficient to demonstrate personal jurisdiction."); *Joudeh v. Beck*, 2018 WL 3364653, at *3 (D. Ariz. July 10, 2018) ("the allegations … do not plausibly show any purposeful direction of relevant activities by Defendants to Arizona"); *Vollmer v. Present*, 2011 WL 11415, at *3 (D. Ariz. Jan. 4, 2011).

9

**GODADDY INC. AND GODADDY.COM, LLC'S OPPOSITION TO PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

to "correct mistakes" made by GoDaddy in offering any of its services, (b) to "correct mistakes" of any domain name registrar, or (c) to avoid any potential civil liability (including any potential claims by the original registrant of the Domain). *See* Doc. 26-1 § 15; Doc. 18-1 at Ex. O § 8. As a result, Prime is unlikely to succeed on its contract claims.

### 2. Prime Cannot Succeed On A Claim For Breach Of The Covenant Of Good Faith And Fair Dealing

A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must prove that the defendant "either [acted] in a manner that denies the other party the reasonably expected benefits of the contract or [used] its discretion under the terms of the contract for a reason beyond the risks assumed by the party claiming a breach." *See Argyros v. Island Storage & Marine LLC*, 2021 WL 4427061, at *4 (D. Ariz. Sept. 27, 2021) (internal quotation marks and citation omitted). Any claim based on this implied covenant "cannot directly contradict an express contract term," *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1155–56 (D. Ariz. 2016) (citation omitted), and "an implied covenant claim is not a tool to create new terms of a contract." *Argyros*, 2021 WL 4427061, at *4.

Prime's claim fails because the UTOS and DNRA expressly authorized the alleged conduct at issue—the alleged retrieval or transfer of a domain to correct a registrar's mistake and/or to avoid potential civil liability. "If contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires." *Jones v. GEICO Cas. Co.*, 2021 WL 3602855, at *4 (D. Ariz. Aug. 13, 2021) (citation omitted). Moreover, Prime received *more* than what it was promised under the parties' contracts in the event the Domain was returned to the original registrant—a full refund and a $7,350 in-store credit (such that Prime obtained two other premium domains registrations, butane.org and butane.net, for free). Doc. 18 ¶ 46; Doc. 18-1 at Ex. N § 6. Prime cannot frustrate the terms of the parties' contracts, and attempt to create new terms in order to seek a financial windfall under the guise of the implied covenant of good faith and fair dealing. *See Regency Midwest Ventures Ltd. P'ship v. Best W. Int'l, Inc.*, 2017 WL 992357, at *4 (D. Ariz. Mar. 15, 2017)

(dismissing implied covenant claim because court could not "grant [plaintiffs] greater rights than that they bargained for").

### 3. Prime Cannot Succeed On Its Tort Claims

Prime cannot succeed on its tort claims for numerous reasons. First, the economic loss rule ("ELR") bars these claims. The ELR "limits a party to its contractual remedies for purely economic loss arising from the other party's alleged failure to adequately perform its promises under a contract." *Maricopa Cnty v. Office Depot, Inc.*, 2014 WL 6611562, at *7 (D. Ariz. Nov. 21, 2014) (internal quotations omitted). Courts applying Arizona law have broadly applied the ELR to bar tort claims that are duplicative of contract claims or otherwise premised on the parties' contractual relationship. *See, e.g.*, *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 152 (Ariz. Ct. App. 2011) (ELR barred negligence claims where plaintiffs were seeking "purely economic loss from [defendant's] alleged failure to adequately perform its promises under the Agreement"); *McClure v. State Farm Life Ins. Co.*, 608 F. Supp. 3d 813, 824–25 (D. Ariz. 2022) (ELR barred conversion claim "based upon exactly the same conduct as [plaintiff's] breach of contract claims"); *LaRussa v. NMTC, Inc.*, 2007 WL 9724933, at *5 (D. Ariz. Mar. 30, 2007) (ELR barred tortious interference claims based on "Defendant's breach of the [parties' contract]," and "the economic repercussions from that breach of contract"). Prime's tort claims are based on the same allegations as its contract claims—that is, allegations that GoDaddy removed the Domain from Prime's account to correct an error or mistake. Because Prime has not, and cannot, allege non-economic losses, the ELR bars Prime's duplicative tort claims premised on the same allegations as its contract claims.

Second, each of Prime's tort claims fails as a matter of law:

***Conversion and Trespass to Chattel:*** Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005). Trespass to chattel has the same elements, and differs only in the measure of damages. *See Pistor v. Garcia,* 2014 WL 116391, at *7 n.3 (D. Ariz. Jan. 13, 2014). Prime's claims fail for at least two reasons. *First*, domains

11

cannot be the subject of a conversion or trespass to chattel claim. *See, e.g., Hao v. GoDaddy.com, LLC*, 2023 WL 3078660, at *1–2 (D. Ariz. Apr. 25, 2023) ("[A] domain name is intangible property that cannot be the object of a conversion claim[.]"); *Rolle v. Robel*, 2024 WL 342457, at *5 (D. Ariz. Jan. 30, 2024) (same). *Second*, Prime agreed in the UTOS and DNRA that GoDaddy could cancel or transfer a domain name to correct an error or mistake. *See Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1047 (D. Ariz. 2004) ("Arizona courts recognize that an act which would otherwise constitute a conversion may be precluded from having that effect by the plaintiff's consent to the act, either express or implied.").

**Tortious Interference With Prospective Economic Advantage and Contract:**[2] To prevail on a tortious interference claim, Prime must prove: (1) "the existence of a valid contractual relationship or business expectancy;" (2) "the interferer's knowledge of the relationship or expectancy;" (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy;" and (4) "resultant damage to the party whose relationship or expectancy has been disrupted." *Miller*, 104 P.3d at 202. In addition, "[t]he interference must be 'improper' before liability will attach." *Id.* Prime cannot prevail on this claim because the alleged "improper" act—unwinding the auction to correct an error or mistake, and issuing Prime a full refund (plus additional in-store credit)—was an exercise of GoDaddy's express contractual rights. *See, e.g.*, *Smith v. Chrysler Grp. LLC*, 2014 WL 1577515, at *11 (D. Ariz. Apr. 19, 2014) (granting motion to dismiss because "[a]lthough [defendant] intentionally caused the termination of [plaintiff's] contractual relationship with the [third party], it cannot be said that [defendant] tortuously interfered with the contract when it exercised a power expressly granted to it by the contract").

**Gross Negligence, Negligence, and Negligent Misrepresentation:** Prime cannot prevail on any negligence claim because those claims are based on a mere alleged contractual breach. "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent

---

[2] Prime asserted two tortious interference claims, *see* Doc. 18 ¶¶ 91–102, but "Arizona recognizes one tort only: tortious interference with a contract, which requires proof of 'a contractual relationship *or* business expectancy.'" *Set Enters. Inc. v. 132297 Ontario Inc.*, 2014 WL 11515702, at *2 n.3 (D. Ariz. Apr. 24, 2014) (quoting *Miller*, 104 P.3d at 202).

some duty, an action for negligence cannot be maintained." *Lorenz v. State*, 364 P.3d 475, 477 (Ariz. Ct. App. 2015) (citation omitted). Prime cannot show that GoDaddy owed it a duty of care, separate and apart from any alleged contractual duty, and thus Prime cannot prevail on its duplicative negligence claims. *See Engage BDR v. GoDaddy*, 2021 WL 8820555, at *3 (C.D. Cal. Sept. 23, 2021) (plaintiffs failed to state a negligence claim because GoDaddy's alleged duties as a domain registrar "all arise from the registration and renewal contracts underlying Plaintiffs' contractual claims"); *Ireland Miller, Inc. v. Shee Atika Holdings Phoenix, LLC*, 2010 WL 2743653, at *3 (D. Ariz. July 12, 2010) (dismissing "claims based in negligence [that] are duplicative of [plaintiff's] breach of contract claim" because negligence claims alleging that "Seller breached a duty set forth in the parties' agreement merely is another attempt to plead a breach of contract claim").

### 4. Prime Cannot Prevail On An Estoppel Claim

Prime's "estoppel" claim fails because the parties' relationship is governed by written contracts, including the UTOS, DNRA, and AMA. "Arizona law prohibits an action based on the promissory estoppel theory of liability if there is an express, written contract on the same subject matter." *Bowman v. Honeywell Int'l, Inc.*, 438 F. App'x 613, 615 (9th Cir. 2011)) (citation omitted). Prime cannot use equitable claims to get a second bite at the apple on its contract claims.

### 5. Prime Cannot Prevail On A Separate "Claim" For Injunction

Prime cannot prevail on its "claim" for injunctive relief because injunctions "are *remedies*…. They are not causes of action in their own right—and therefore cannot be pleaded as such." *See Cruz v. Cameron Fin. Grp. Inc.*, 2024 WL 326957, at *4 (D. Ariz. Jan. 29, 2024).

### C. Prime Failed To Demonstrate A Likelihood Of Irreparable Harm

"Irreparable harm is harm for which there is no adequate remedy at law, such as money damages." *TDBBS LLC v. Ethical Prod. Inc.*, 2019 WL 1242961, at *6 (D. Ariz. Mar. 18, 2019) (citing *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). A plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction" and not merely "a possibility." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239,

1249 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 22). Irreparable harm cannot be based on "unsupported and conclusory statements regarding harm"—rather, it must be "grounded in … evidence" and based on "factual findings." *See id.* at 1250. Prime cannot meet this burden.

*First*, Prime's only purported "harm" **occurred nearly four months before it filed the Motion**, and Prime does not contend it is likely to suffer future irreparable harm absent an injunction. As this Court has recognized, "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *See TDBBS*, 2019 WL 1242961, at *6. Here, Prime alleges the proposed new white-label butane sales business has already "ended," causing it to lose $78,000 in "development and marketing costs." *See* Doc. 18 ¶¶ 48, 55; Doc. 20-1 ¶ 19. These alleged past harms do not suggest that Prime is likely to suffer *future* irreparable harm absent an injunction. *See TDBBS*, 2019 WL 1242961, at *7 (no irreparable harm where the alleged "harm has already occurred, if at all" because "preliminary injunctions are not meant to remedy past harms"); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (reversing grant of preliminary injunction where the alleged injury was "too remote and speculative," because "[a]t a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it *will be* exposed to irreparable harm") (emphasis supplied).

*Second*, Prime offers mere speculation that an injunction is necessary to prevent "actions to further transfer the [Domain] and remove it from this Court's reach" and to prevent "sudden expiration" of the Domain that might "potentially open the door to the Domain" being acquired by someone "outside the jurisdiction of this Court." *See* Doc. 20 at 16. Prime's conjecture and speculation falls well short of satisfying its burden to show a *likelihood* of irreparable harm, and Pime has not submitted any evidence for its speculative assertions. Absent any competent evidence, Prime cannot establish a likelihood of irreparable harm. *See Identity Intel. Grp.*, 2022 WL 17903681, at *3 (no irreparable harm where plaintiff "fail[ed] to provide any such evidence other than its bare assertions of future harm"); *Forefront Dermatology S.C. v. Crossman*, 642 F. Supp. 3d 947, 952 (D. Ariz. 2022) (denying preliminary

injunction where plaintiff "failed to point to evidence in the record showing an actual or significant risk that irreparable harm will occur in the immediate future").

*Third*, Prime alleges that the Domain's original registrant, non-party Calor, a UK entity, registered the Domain with 123 Reg, and that the Domain was returned to Calor on June 4, 2024 (and again registered with 123 Reg), because it should not have been auctioned. *See* Doc. 18 ¶¶ 15, 55. As explained above, 123 Reg is *already* "outside the jurisdiction of this Court." Thus, the requested injunction would not avoid the alleged "harm."

*Fourth*, Prime failed to show that any alleged injury is not compensable with money damages. Prime alleges that Garbutt and Giordano were planning to establish a new white-label butane sales business, but the proposed business "ended." *See* Doc. 18 ¶¶ 35, 48. Any "damages" related to a hypothetical, prospective new business would necessarily be speculative. *See McAlister v. Gieszl*, 2010 WL 173309, at *6–7 (Ariz. Ct. App. Jan. 19, 2010) (to recover lost profits, a new business "must show with reasonable certainty that the new business would have been feasible, would have yielded a profit, and prove how much profit the business would have realized"). Nor does Prime attempt to explain why it could not use a different domain for that new business—such as butane.org or butane.net (which Prime obtained for free, as GoDaddy provided in-store credit to fully offset the registration costs). *See* Doc. 18 ¶¶ 36, 48. Indeed, Prime alleges that it re-established its website at butane.net. Doc. 18 ¶ 40 n.6. Similarly, Prime does not explain how it incurred damages for the "loss" of a new white-label butane sales business, when Giordano was already running such a business. *See* Doc. 18 ¶ 35. And even if Prime could somehow show reasonable certainty as to any alleged damages, such losses are recoverable through money damages. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended are not enough." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (cleaned up) (quoting *Sampson v. Murray*, 415 U.S. 61, 94 (1974)).

*Fifth*, Prime delayed over 3.5 months before attempting to join this action—and did not even each out to GoDaddy for a month after the alleged incident at issue—significantly undermining any purported urgency or threat of irreparable harm.[3]

Prime failed to show a likelihood of irreparable harm, and the preliminary injunction should be denied regardless of any other factors. *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) ("Because Plaintiffs have failed to show that they are likely to suffer irreparable harm in the absence of preliminary relief, we need not address the remaining elements of the preliminary injunction standard.") (internal quotations and citation omitted).

### D. The Balance Of Equities Favors GoDaddy And GoDaddy Inc.

Prime cannot demonstrate that the balance of equities favors them because the requested injunctive relief is unnecessary and would be ineffective. "When analyzing this element, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Forefront Dermatology S.C.*, 642 F. Supp. 3d at 954 (quoting *Winter*, 555 U.S. at 24).

Prime asserts that the balance of equities "heavily" favors them because an injunction "preserv[es] the status quo." Doc. 20 at 16. Not so, as Prime allege the Domain was returned to Calor (and registered with 123 Reg) nearly 4 months **before** Prime filed the Motion. *See* Doc. 18 ¶¶ 15, 55. Accordingly, it is Prime that is seeking to alter the status quo (and potentially injure the Domain registrant, a nonparty to this action). Moreover, Prime speculates that, absent an injunction, it "might forever lose [its] control and ownership interest" in the Domain. *See* Doc. 20 at 17. Again, Plaintiffs have not served 123 Reg with process or alleged a basis for personal jurisdiction in this forum. Thus, Prime's requested injunction would not be enforceable as to the registrar of the Domain.

---

[3] *See Barton & Assocs. Inc. v. Trainor*, 2020 WL 6081496, at *6 (D. Ariz. Oct. 15, 2020) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *Li v. Home Depot USA Inc.*, 2013 WL 12120065, at *3 (C.D. Cal. Jan. 7, 2013) (three-month delay "implies a lack of urgency and irreparable harm"); *Givemepower Corp. v. Pace Compumetrics, Inc.*, 2007 WL 951350, at *7 (S.D. Cal. Mar. 23, 2007) (two-month "delay in seeking injunctive relief undercuts … argument of immediate, irreparable harm").

On the other hand, a preliminary injunction as to GoDaddy and GoDaddy Inc. would create significant and unnecessary confusion. It would prohibit conduct outside of GoDaddy and GoDaddy Inc.'s control, as GoDaddy is not the Domain registrar and GoDaddy Inc. is not a registrar at all. If the preliminary injunction were entered, it would also undermine the clear provisions in the UTOS and DNRA that expressly allow GoDaddy to take actions to correct mistakes or errors by a domain registrar. Accordingly, the balance of equities tips against Prime's unnecessary and ineffective proposed injunction.

### E. Granting A Preliminary Injunction Is Against The Public Interest

When the impact of an injunction is "limited only to the parties," the public interest is usually a neutral factor. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* Prime's only statement on this issue is a vague assertion that "the public has a strong interest in holding private parties to their agreements." *See* Doc. 20 at 16. But as set forth above, Prime failed to identify any contractual provision that GoDaddy purportedly breached. Rather, it is Prime that is attempting to evade the clear terms of the UTOS and DNRA that foreclose its claims. Moreover, the public has a strong interest in ensuring that registrars can correct errors or mistakes, particularly because the registration function is passive and automated. Prime's requested relief undermines that ability, and thus would undermine the public interest in a properly functioning domain name registration process. Accordingly, the public interest militates against granting an injunction.

### V. CONCLUSION

For the foregoing reasons, GoDaddy and GoDaddy Inc. respectfully request that this Court deny Prime's Motion for a Temporary Restraining Order and Preliminary Injunction.

Dated: October 3, 2024

**COZEN O'CONNOR**
Jeffrey M. Monhait

By: *s/Jeffrey M. Monhait*
      Jeffrey M. Monhait

Attorneys for Defendants
GoDaddy Inc. and GoDaddy.com, LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies, under penalty of perjury under the laws of the State of Arizona that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey J. Neuman
JJN SOLUTIONS, LLC
9445 Brenner Ct.
Vienna, VA 22180
(202) 549-5079
jeff@jjnsolutions.com

Counsel for Plaintiffs

Isacc S. Crum
MESSNER REEVES LLP
7250 N. 16th St., Suite 410
Phoenix, AZ 85020
(602) 457-5059
icrum@messner.com

Counsel for Plaintiffs

SIGNED AND DATED this 3rd day of October, 2024 at Philadelphia, Pennsylvania.

COZEN O'CONNOR

By: *s/ Jeffrey M. Monhait*
     Jeffrey M. Monhait

**GODADDY INC. AND GODADDY.COM, LLC'S OPPOSITION TO PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**