Jeffrey M. Monhait, AZ Bar No. 038707
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA  19103
Telephone: (215) 665-2084
Email: jmonhait@cozen.com

Attorneys for Defendants
GoDaddy Inc. and GoDaddy.com, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Crisby Studio AB, a Swedish limited liability company, Niklas Thorin, a Swedish resident, and Prime Loyalty, a New York limited liability company,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GoDaddy, Inc. a Delaware corporation, GoDaddy.com, LLC, a Delaware corporation, and 123-Reg Limited, a UK company,<br><br>　　　　Defendants. | Case No.: 2:24-cv-02165-SMB<br><br>**DEFENDANTS GODADDY INC. AND GODADDY.COM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

## I.     INTRODUCTION

In their First Amended Complaint ("FAC"), Plaintiffs Crisby Studio AB, Niklas Thorin ("Thorin") (together, "Crisby"), and Prime Loyalty, LLC ("Prime") (collectively, "Plaintiffs"), allege that they purchased a domain name registration through GoDaddy.com, LLC's ("GoDaddy") auction services—calor.com for Crisby (the "Calor Domain"), and butane.com for Prime (the "Butane Domain") (collectively, the "Domains")—and two months later, GoDaddy unwound the transactions because the Domains were auctioned in error. The contracts governing the parties' relationships expressly permitted GoDaddy to cancel or transfer a domain registration to correct such alleged mistakes or errors. Accordingly, GoDaddy promptly refunded Plaintiffs the full amount paid for the Domains, and GoDaddy also gave Plaintiffs an additional credit for any inconvenience ($350 for Crisby and $7,350 for Prime). Several months later, Plaintiffs filed this misguided and scattershot lawsuit against GoDaddy, GoDaddy Inc. (the sole member of GoDaddy's corporate grandparent, and an entity that has no alleged involvement in this action), and 123-Reg Limited ("123-Reg"), the registrar of the Domains. Each of Plaintiffs' claims is deficient as a matter of law.

Plaintiffs' claims fail for numerous reasons, including: (1) Plaintiffs failed to abide by basic pleading standards, impermissibly lumping together all "Defendants" as a collective whole in an apparent attempt to obscure the fact that Plaintiffs have no basis to bring a claim against GoDaddy Inc.; (2) any claim against GoDaddy Inc. must be dismissed because Plaintiffs did not allege that GoDaddy Inc. did anything, and GoDaddy Inc. is not a registrar or a provider of domain auction services; (3) Plaintiffs' contract claims fail because Plaintiffs failed to identify any contractual provision that was allegedly breached, and cannot do so because the parties' contracts expressly allowed GoDaddy's alleged actions; (4) the economic loss rule ("ELR") bars Plaintiffs' duplicative tort claims, those claims are not cognizable as a matter of law, and/or Plaintiffs cannot improperly transform contract claims into a tort; (5) Plaintiffs' estoppel claim fails because there are written agreements governing the parties' relationship; and (6) Plaintiffs' "claim" for an injunction fails because an injunction is a

1

**GODADDY INC. AND GODADDY.COM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

1  remedy, not a cause of action. No amendment could cure these defects, and the Court should
2  dismiss the FAC with prejudice.

## II. RELEVANT FACTUAL BACKGROUND

### A. Background On GoDaddy

GoDaddy is a domain name registrar, meaning it manages the reservation of Internet domain names registered through it by members of the public. *See Academy of Motion Picture Arts and Sciences v. GoDaddy.com, Inc.*, 2015 WL 5311085, at *1 (C.D. Cal. Sept. 10, 2015); *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 548 (9th Cir. 2013). GoDaddy Inc. is the sole member of GoDaddy's corporate grandparent, *see* Doc. 24, and GoDaddy Inc. is not a domain name registrar. "[T]o use a domain name in connection with a web site, the web site operator must register the name with one of a number of competing companies known as 'registrars.' Registrars accept domain name registrations on a first-come, first-served basis." *Am. Girl, LLC v. Nameview, Inc.*, 381 F. Supp. 2d 876, 879 (E.D. Wis. 2005). GoDaddy provides domain name services in connection with domains that are not registered at the time of purchase as well as domains that have been previously registered. The latter category is referred to as aftermarket domain names. One component of GoDaddy's aftermarket domain services is GoDaddy Auctions, a venue to facilitate the purchase and sale of currently registered domain names and expiring domain names. *See* Doc. 18-1 at Ex. N §§ 1–2, 6. GoDaddy "is not the owner of the domain names listed" for auction, and "has no control over the quality, safety, or legality of the domain names listed." *See id.* at § 2.

### B. Plaintiffs' Allegations

#### 1. Crisby's Allegations

Crisby alleges that Thorin, a GoDaddy customer, won an auction for the Calor Domain with an $11,405 bid, and paid on April 5, 2024. Doc. 18 ¶¶ 27–29. Crisby alleges that on May 27, 2024, they executed a joint venture agreement ("JVA") with non-party QLSC Consulting S.R.L. ("QLSC"), a Romanian company, "for the purpose of developing and launching a dating app." *See id.* ¶ 32. Crisby alleges that they warranted that "it [sic] currently owns" the

Calor Domain, and agreed to "transfer ownership" of the Calor Domain "to the Joint Venture upon the achievement of certain milestones." *Id.* ¶ 33.

Crisby alleges that on May 29, 2024, a GoDaddy sales manager contacted Thorin to discuss a potential purchase of the Calor Domain. *See* Doc. 18 ¶ 42. In response, Thorin allegedly sought "a high six-figure amount." *See id.* ¶ 44. Crisby alleges that on June 4, 2024, GoDaddy told Thorin that the Calor Domain was mistakenly listed for auction "due to an unexpected error" and should never have been auctioned. *See id.* ¶ 46. Crisby alleges that GoDaddy removed the Calor Domain from Thorin's account to correct the error, returned the Calor Domain to the original registrant, and gave Thorin a full refund and an additional $350 in-store credit. *See id.* ¶¶ 15, 46, 55. Crisby alleges that after the Calor Domain was removed, QLSC terminated the JVA. *See id.* ¶ 48.

### 2. Prime's Allegations

Prime alleges that its owner, non-party Jeff Garbutt ("Garbutt"), is a GoDaddy customer that won an auction for the Butane Domain with a $19,755 bid on March 31, 2024. Doc. 18 ¶¶ 36–37. Prime alleges that prior to the auction, Garbutt "secured" funding from non-party Mike Giordano ("Giordano") to bid on the Butane Domain, and that they agreed to establish a "joint white-label butane business" that Giordano would manage (Giordano was apparently already running such a white-label butane business). *Id.* ¶ 35. Prime alleges that on April 7, 2024, Garbutt purchased additional services, including registrations for the domain names butane.net and butane.org, for $7,024.34. *See id.* ¶ 38. Prime alleges that Giordano also began "contractual negotiations" with his existing network for the sale of white-label butane products. *See id.* ¶ 41.

Prime alleges that on May 29, 2024, a GoDaddy sales manager contacted Garbutt to discuss a potential purchase of the Butane Domain. Doc. 18 ¶ 43. In response, Garbutt stated that he "curated an entire portfolio" of domain names "in the butane space," but that he was currently "open to a Joint Venture/Partnership." Doc. 18-1 at Ex. 10. Prime alleges that on June 4, 2024, GoDaddy told Garbutt that the Butane Domain was mistakenly listed for auction "due to an unexpected error" and should never have been auctioned. Doc. 18 ¶ 46. Prime

alleges that GoDaddy removed the Butane Domain from Garbutt's account to correct the error, returned the Butane Domain to the original registrant, and gave Garbutt a full refund plus a $7,350 in-store credit to cover, among other things, the butane.net and butane.org domain names (so Garbutt thus obtained those domain registrations for free). *See id*. ¶¶ 15, 46, 55.

### C. The Parties' Contracts

GoDaddy requires all customers to agree to its Universal Terms of Service Agreement ("UTOS") and other uniform agreements relating to the products or services purchased, such as the Domain Name Registration Agreement ("DNRA") for domain registration services and the Auctions Membership Agreement ("AMA") for auctions services. *See* Doc. 18-1 at Exs. E, N–O, 4–5; *see* Doc. 26-1. It is undisputed that Plaintiffs agreed to, and are bound by, the UTOS, DNRA, and AMA. *See* Doc. 18 ¶¶ 72, 82; Doc. 18-1 at Ex. N § 1 (the UTOS "is incorporated [into the AMA] by reference"), Ex. O § 1 (same for DNRA), Ex. E at 2 ("during the checkout process, you agreed to [the UTOS]"), Exs. 4–5 (same); Doc. 2 at 10 ("Crisby and Defendants' relationship is governed by" the AMA and DNRA); Doc. 20 at 11 (same for Prime).

The UTOS and DNRA expressly permit GoDaddy to cancel or transfer a domain registration to correct mistakes or errors (among other reasons). First, the UTOS provides:

> GoDaddy expressly reserves the right … to deny, cancel, terminate, suspend, lock, or modify access to (or control of) any Account or Services (including the right to cancel or transfer any domain name registration) for any reason (as determined by GoDaddy in its sole and absolute discretion), including but not limited to the following: (i) to correct mistakes made by GoDaddy in offering or delivering any Services (including any domain name registration), (ii) to protect the integrity and stability of, and correct mistakes made by, any domain name registry or registrar, …[and] (viii) to avoid any civil or criminal liability on the part of GoDaddy….

Doc. 26-1 § 15. Similarly, the DNRA provides:

> You acknowledge and agree that GoDaddy and registry reserve the right to deny, cancel or transfer any registration or transaction, or place any domain name(s) on lock, hold or similar status, as either deems necessary, in the unlimited and sole discretion of either GoDaddy or the registry: … (ii) to protect the integrity and stability of, and correct mistakes made by, any domain name registry or

registrar, … [and] (vii) to avoid any liability, civil or criminal, on the part of registry operator…."

Doc. 18-1 at Ex. O § 8. Also, the AMA provides for a full refund if an "Expired Domain Name is reclaimed by the original registrant." *See* Doc 18-1 at Ex. N § 6. Additionally, the UTOS contains a limitation of liability provision that states, in part:

> IN NO EVENT SHALL GODADDY … BE LIABLE TO YOU … FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES WHATSOEVER, INCLUDING ANY THAT MAY RESULT FROM (I) THE ACCURACY, COMPLETENESS, OR CONTENT OF THIS SITE, … [and/or] (XI) ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF YOUR USE OF THIS SITE OR THE SERVICES FOUND AT THIS SITE, WHETHER BASED ON WARRANTY, CONTRACT, TORT, OR ANY OTHER LEGAL OR EQUITABLE THEORY, AND WHETHER OR NOT GoDaddy IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES[.]

Doc. 26-1 § 20. The UTOS also expressly limits GoDaddy's total aggregate liability to $10,000. *See id.*

### D. The Instant Litigation

Crisby commenced this action by filing a Complaint on August 23, 2024. Doc. 1. On September 25, 2024, Crisby filed the FAC to add Prime as a named plaintiff. Doc. 18. In the FAC, Plaintiffs purported to assert 12 separate causes of action, including: (a) conversion and trespass to chattel (Counts 1–2); (b) breach of contract and breach of the covenant of good faith and fair dealing (Counts 3–5); (c) tortious interference (Counts 6–7, but only Crisby asserted Count 7); (d) negligence claims (Counts 8–10); (e) estoppel (Count 11); and (f) a claim for injunctive relief (Count 12). *See* Doc. 18 ¶¶ 56–131. Crisby and Prime purport to assert the same claims even though their allegations arise out of different transactions concerning different domain names.

### III. LEGAL STANDARD

To avoid a Rule 12(b)(6) dismissal, the FAC must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *accord Iqbal*, 556 U.S. at 678, ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice."). Moreover, "[t]he Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint." *Stoyanof v. Crocodiles Not Waterlillies, L.L.C.*, 2011 WL 13232088, at *2 (D. Ariz. June 23, 2011) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### IV.  ARGUMENT

#### A.  Plaintiffs' FAC Is Defective And Should Be Summarily Dismissed

##### 1.  Plaintiffs Lumped Defendants Together, Violating Fed. R. Civ. P. 8

Plaintiffs' FAC is deficient on its face because Plaintiffs failed to comply with Fed. R. Civ. P. 8, and the FAC should be summarily dismissed. "A complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief' to give the defendant 'fair notice' of (1) what the claims are and (2) the grounds upon which they rest." *First-Citizens Bank & Tr. Co. v. HSBC Holdings plc*, 2024 WL 115933, at *13 (N.D. Cal. Jan. 10, 2024) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). A complaint is deficient under Rule 8 and fails to provide fair notice of the claims when it "repeatedly lumps together all of the defendants as a collective whole … without specifically alleging the role that each defendant played in causing [p]laintiff's alleged injury." *Petramala v. Connelly*, 2019 WL 1932108, at *1 (D. Ariz. May 1, 2019). Courts will dismiss a complaint that uses "the shotgun approach by making every allegation against" all of the defendants. *BBK Tobacco & Foods LLP v. Skunk Inc.*, 2019 WL 1921594, at *6 (D. Ariz. Apr. 30, 2019); *accord Robertson v. Millett*, 2022 WL 375854, at *1 (D. Ariz. Feb. 8, 2022) (dismissing complaint because

"Plaintiff fails to isolate the conduct of each Defendant and instead lumps all the defendants together and only generally alleges actions taken by all defendants.") (internal quotations and brackets omitted); *First-Citizens Bank & Tr. Co.*, 2024 WL 115933, at *13 (explaining that "'[s]hotgun pleading' occurs when one party pleads that multiple parties did an act, without identifying which party did what specifically," or "when some of the named defendants do not appear in the factual allegations," and "[a] complaint that employs this pleading device violates Rule 8 and should be dismissed" regardless of whether the facts support an alleged claim).

Here, Plaintiffs failed to make discrete allegations against GoDaddy, GoDaddy Inc., and 123-Reg, and impermissibly lumped all the Defendants together. *See, e.g.*, Doc. 18 ¶¶ 57, 64 (alleging Plaintiffs used "***Defendants'*** auction services" and registered domain names "through ***Defendants'*** registrar"); *id.* ¶ 68 (alleging "***Defendants*** dispossessed Plaintiffs of [the Domains]"); *id.* ¶¶ 104–106 (alleging "***Defendants*** owed Plaintiffs a duty of care," and that "***Defendants*** breached this duty" through "***Defendants'*** actions"); *id.* ¶¶ 110–112 (same). It is not even apparent which claims Plaintiffs are asserting against which Defendant. For example, Count 5 (breach of the covenant of good faith and fair dealing) is purportedly directed to the "GoDaddy Defendants," and Count 6 (tortious interference) is allegedly made "as to all defendants"—but the allegations in both claims refer to a single, unspecified "Defendant." *See id.* ¶¶ 87–90, 93–96. Just as confusingly, Plaintiffs' allegations in Counts 7 and 10–12 also repeatedly refer to a single, unspecified "Defendant." *See id.* ¶¶ 99–102, 115–129.

Plaintiffs' failure to abide by basic pleading standards and failure to provide GoDaddy and GoDaddy Inc. with fair notice of the claims warrants dismissal.

### 2. Any Claims Against GoDaddy Inc. Must Be Dismissed

As set forth below, Plaintiffs failed to state a claim against any defendant. At best, Plaintiffs' allegations concern their alleged contractual relationships with GoDaddy. *See* Doc. 18-1 at Ex. N § 1 (AMA "entered into by and between GoDaddy.com, LLC … and you"); *id.* at Ex. O § 1 (same for DNRA). Setting aside Plaintiffs' improper "shotgun pleading"-style allegations, Plaintiffs did not offer any factual allegations to support a claim against GoDaddy

Inc. Nor can Plaintiffs do so—GoDaddy Inc. is merely the sole member of GoDaddy's corporate grandparent, not a domain registrar or a provider of domain auction services.

Plaintiffs failed to identify any legal theory that would give them free license to sue a separate corporate entity merely because it is allegedly related to GoDaddy. *See BBK Tobacco & Foods* LLP, 2019 WL 1921594, at *6 (allegation that defendants were "related entities that share a common ownership and/or organizational structure" failed to state a cognizable legal theory that would make one corporate defendant liable for the activities of the other); *Whaleco Inc. v. TemuExpress.com*, 2024 WL 1366933, at *5 (D. Ariz. Apr. 1, 2024) (allegations that GoDaddy "owned" an alleged affiliate entity, "appear[ed] to be processing and responding to… complaints directed to [the other entity]," and "hold themselves out as 'affiliates'" are insufficient "to give rise to the plausible inference that the separate personalities of GoDaddy and [the other entity] have ceased to exist") (internal quotation and citation omitted). GoDaddy Inc. is a separate legal entity that has no relevance to Plaintiffs' allegations, and accordingly, Plaintiffs' claims against GoDaddy Inc. must be dismissed with prejudice.

### B.  Plaintiffs Failed To State A Claim To Relief

Beyond the facial deficiencies in the FAC (*see* Section IV.A., *supra*), Plaintiffs failed to state a claim for relief on any of their claims. No amendment could cure these deficiencies, and Plaintiffs' claims should be dismissed with prejudice.

#### 1.  Plaintiffs' Contract Claims Fails As A Matter of Law (Counts 3-4)

To state a contract claim, Plaintiffs must allege (1) the existence of a contract between each Plaintiff and the named Defendants, (2) a breach of the contract by the named Defendants, and (3) resulting damages to Plaintiffs. *See Gillard v. Good Earth Power AZ LLC*, 2019 WL 1280946, at *4 (D. Ariz. Mar. 19, 2019). "The interpretation of a contract is a question of law for the court to decide, and the court must give effect to a contract provision as written if it is clear and unambiguous." *Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, 2020 WL 411188, at *3 (D. Ariz. Jan. 24, 2020) (citing *Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977)). Moreover, when interpreting the language of an unambiguous contract, courts will not "expand it beyond its plain and ordinary meaning or add something to the contract

which the parties have not put there." *Alpine 4 Techs. Ltd. v. Martin*, 2022 WL 4548118, at *4 (D. Ariz. Sept. 29, 2022) (quoting *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 263 P.3d 69, 75 (Ariz. Ct. App. 2011)). Along a similar vein, courts "will not construe one provision in a contract so as to render another provision meaningless." *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993).

Plaintiffs' contract claims—which are based on the vague allegation that unspecified "Defendants" breached the AMA and DNRA—fail as a matter of law. As a threshold matter, Plaintiffs failed to identify any provision of the AMA or DNRA that was purportedly breached. This failure, standing alone, warrants a dismissal of Plaintiffs' claims. *See Lowry v. EMC Mortg. Corp.*, 710 F. App'x 752 (9th Cir. 2018) (affirming dismissal of contract claim under Arizona law where plaintiffs "failed to identify a contract provision" that was breached); *Silving v. Wells Fargo Bank, NA*, 2012 WL 135989, at *9 (D. Ariz. Jan. 18, 2012) (the "mere identification of the contracts without reference to the provisions violated or the actions of specific Defendants that violated them is insufficient to state a claim for breach of contract"), *aff'd sub nom. Silving v. Am.'s Servicing Co.*, 552 F. App'x 684 (9th Cir. 2014).

Plaintiffs cannot identify a contractual term that was purportedly breached because the contracts ***expressly permitted*** the alleged actions at issue. Plaintiffs allege the Domains were removed from their respective customer accounts to correct "an unexpected error" because the Domains should not have expired or been auctioned. *See* Doc. 18 ¶¶ 46, 55; Doc. 18-1 at Ex. K, Ex. 11. Both the UTOS and the DNRA expressly permitted GoDaddy to "cancel or transfer any domain name registration" for any reason, including, *inter alia*: (a) to "correct mistakes" made by GoDaddy in offering any of its services, (b) to "correct mistakes" of any domain name registrar, or (c) to avoid any potential civil liability (including any potential claims by the original registrant of the Domains). *See* Doc. 26-1 § 15; Doc. 18-1 at Ex. O § 8. And to the extent the Domains were reclaimed by the original registrant, Plaintiffs received precisely what was due under the AMA—a full refund of the amount paid for the Domains (not to mention the additional in-store credits Plaintiffs received). *See* Doc. 18-1 at Ex. N § 6. Plaintiffs cannot plausibly allege a breach of the AMA or DNRA, as a matter of law, when the purported

"breach" is based on alleged actions that were expressly authorized under the plain terms of the parties' contracts. Plaintiffs' contract claims should be dismissed with prejudice.

### 2. Plaintiffs' Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Fails As A Matter Of Law (Count 5)

A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must prove that the defendant "either [acted] in a manner that denies the other party the reasonably expected benefits of the contract or [used] its discretion under the terms of the contract for a reason beyond the risks assumed by the party claiming a breach." *See Argyros v. Island Storage & Marine LLC*, 2021 WL 4427061, at *4 (D. Ariz. Sept. 27, 2021) (internal quotation marks and citation omitted). Any claim based on this implied covenant "cannot directly contradict an express contract term," *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1155–56 (D. Ariz. 2016) (citation omitted), and "an implied covenant claim is not a tool to create new terms of a contract." *Argyros*, 2021 WL 4427061, at *4; *see In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *5 (D. Ariz. Dec. 20, 2017) ("[T]he implied covenant of good faith and fair dealing ensures that parties do not frustrate already-existing contract terms; it does not create new ones.").

Plaintiffs cannot state a claim for breach of the implied covenant by alleging conduct that GoDaddy was expressly authorized to take under the UTOS and DNRA—the alleged retrieval or transfer of a domain to correct a registrar's mistake and/or to avoid potential civil liability. As explained in Section IV.B.1., *supra*, the UTOS and DNRA permitted GoDaddy to "cancel or transfer any domain name registration" for any reason, including to correct mistakes by GoDaddy or any domain name registrar, or to avoid potential civil liability. *See* Doc. 26-1 § 15; Doc. 18-1 at Ex. O § 8. Plaintiffs cannot plausibly state a claim based on the allegation that GoDaddy acted pursuant to the UTOS and DNRA in order to address the precise situation contemplated by those agreements. "If contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires." *Jones v. GEICO Cas. Co.*, 2021 WL 3602855, at *4 (D. Ariz. Aug. 13, 2021) (citation omitted).

Moreover, Crisby and Prime received *more* than what they were promised under the parties' contracts in the event that an auctioned domain was returned to the original registrant—a full refund (Crisby also received an additional $350 credit, and Prime received a $7,350 credit). *See* Doc. 18 ¶ 46; Doc. 18-1 at Ex. N § 6. Plaintiffs cannot frustrate the express terms of the governing contracts—and instead create new terms in order to seek a financial windfall—under the guise of the implied covenant of good faith and fair dealing. *See In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *5; *Regency Midwest Ventures Ltd. P'ship v. Best W. Int'l, Inc.*, 2017 WL 992357, at *4 (D. Ariz. Mar. 15, 2017) (dismissing implied covenant claim on grounds that court could not "grant [plaintiffs] greater rights than that they bargained for").

### 3. Plaintiffs' Tort Claims Fail As A Matter Of Law (Counts 1-2, 6-10)

#### a. The ELR Bars Plaintiffs' Tort Claims

Plaintiffs' tort claims all seek to recover purely economic loss based on the alleged conduct underlying Plaintiffs' contract claims, and thus the ELR bars these claims. Under Arizona law, the ELR "limits a party to its contractual remedies for purely economic loss arising from the other party's alleged failure to adequately perform its promises under a contract." *Maricopa Cnty v. Office Depot, Inc.*, WL 6611562, at *7 (D. Ariz. Nov. 21, 2014) (internal quotations omitted). As courts have explained, the ELR serves important policy interests and is "based on the premise that contract law and tort law each protect distinct interests." *Frontier Airlines Inc. v. Menzies Aviation (USA) Inc.*, 2022 WL 103526, at *4 (D. Ariz. Jan. 11, 2022) (internal quotations and citation omitted). That is, "contract law enforces the expectancy interests between contracting parties and provides redress for parties who fail to receive the benefit of their bargain," whereas tort law, in contrast, "seeks to protect the public from harm to person or property." *Id.* (citation omitted). Thus, the ELR clarifies that pure alleged economic losses cannot be recovered in tort, and functions "to encourage private ordering of economic relationships and to uphold the expectations of the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain." *Id.* (citations omitted).

Courts applying Arizona law have broadly applied the ELR to bar tort claims that are duplicative of contract claims or otherwise premised on the parties' contractual relationship. *See, e.g.*, *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 152 (Ariz. Ct. App. 2011) (ELR barred negligence claims where plaintiffs were seeking "purely economic loss from [defendant's] alleged failure to adequately perform its [contractual] promises"); *Frontier Airlines Inc.*, 2022 WL 103526, at *4 (ELR barred negligence claim); *McClure v. State Farm Life Ins. Co.*, 608 F. Supp. 3d 813, 824–825 (D. Ariz. 2022) (ELR barred conversion claim "based upon exactly the same conduct as [plaintiff's] breach of contract claims"); *Sitevoice, LLC v. Gyrus Logic, Inc.*, 2014 WL 4722329, at *6 (D. Ariz. Sept. 23, 2014) (ELR barred conversion claim that alleged "essentially the failure to receive the property promised" in the parties' contract); *TSYS Acquiring Sols., LLC. v. Elec. Payment Sys., LLC*, 2010 WL 3882518, at *4 (D. Ariz. Sept. 29, 2010) (same); *LaRussa v. NMTC, Inc.*, 2007 WL 9724933, at *5 (D. Ariz. Mar. 30, 2007) (ELR barred tortious interference claims where the alleged conduct was "simply Defendant's breach of the [parties' contract]" and "the economic repercussions from that breach of contract"); *QC Const. Prod., LLC v. Cohill's Bldg. Specialties, Inc.*, 423 F. Supp. 2d 1008, 1016 (D. Ariz. 2006) (same where plaintiff's allegations consisted of "purely economic harm resulting from actions that were breaches of the parties' contract").

Here, each of Plaintiffs' tort claims are based on the exact same allegations as the contract claims—that is, allegations that GoDaddy removed the Domains from Plaintiffs' respective accounts to correct an error or mistake. *Compare* Doc. 18 ¶¶ 77–78, 84 (alleging GoDaddy breached AMA and DNRA because it "should have known whether it had the right to offer the [Domains] for sale" and improperly "remov[ed] the [Domains] from Plaintiffs' registrar accounts]"), *with id.* ¶¶ 60, 67 (conversion and trespass to chattel claims based on same allegations that GoDaddy "wrongfully took possession of the [Domains]"); *id.* ¶¶ 96, 101 (tortious interference claims based on same allegations that GoDaddy "unilaterally converted" the Domains); *id.* ¶¶ 105, 111, 118 (negligence claims based on same allegations that GoDaddy "misappropriate[ed] the Domains," "negligently auction[ed] off domain names," and failed to exercise reasonable care "to sell and transfer the [Domains] to Plaintiff").

Plaintiffs have not, and cannot, allege non-economic losses, and thus the ELR bars Plaintiffs' duplicative tort claims, which are all premised on the same allegations as their contract claims.

### b. Plaintiffs Failed To State A Tort Claim

Each of Plaintiffs' tort claims is also facially deficient and fails as a matter of law.

***Conversion and Trespass to Chattel (Counts 1-2):*** Plaintiffs cannot state claims for conversion or trespass to chattel based on the alleged loss of the Domains. Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005). Trespass to chattel has the same elements, and differs only in the measure of damages. *See Pistor v. Garcia,* 2014 WL 116391, at *7 n.3 (D. Ariz. Jan. 13, 2014).

Plaintiffs' claims fail for at least two reasons. *First*, domains are intangible property, and as such, cannot be the subject of a claim for conversion or trespass to chattel under Arizona law. *See, e.g., Rolle v. Robel*, 2024 WL 342457, at *5 (D. Ariz. Jan. 30, 2024) (dismissing conversion claim because a domain is not "the proper subject of a conversion claim"); *Hao v. GoDaddy.com, LLC*, 2023 WL 3078660, at *1–2 (D. Ariz. Apr. 25, 2023) (same"); *see id.* (collecting cases from jurisdictions that, like Arizona, follow the "Restatement's strict merger requirement for otherwise intangible property" and "concluded that internet domain names" cannot be the subject of a conversion claim). *Second*, Plaintiffs agreed in the UTOS and DNRA that GoDaddy could cancel or transfer a domain name registration to correct an error or mistake. *See Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1047 (D. Ariz. 2004) ("Arizona courts recognize that an act which would otherwise constitute a conversion may be precluded from having that effect by the plaintiff's consent to the act, either express or implied.") (internal quotations omitted); accord Restatement (Second) of Torts § 252 (1965). Plaintiffs' claims fail as a matter of law and must be dismissed with prejudice.

///

///

***Tortious Interference With Prospective Economic Advantage and Contract (Counts 6-7):***[1] To state a tortious interference claim, Plaintiffs must show: (1) "the existence of a valid contractual relationship or business expectancy;" (2) "the interferer's knowledge of the relationship or expectancy;" (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy;" and (4) "resultant damage to the party whose relationship or expectancy has been disrupted." *Miller*, 104 P.3d at 202. In addition, "[t]he interference must be 'improper' before liability will attach." *Id.*; *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1026 (Ariz. 2005) (explaining that "there is a requirement that the interference be *both* intentional and improper," and recognizing that "a defendant properly may interfere intentionally with another's contract by appropriate means to protect an interest of the defendant").

As a threshold matter, Plaintiffs failed to offer any factual allegations concerning any of these elements as against GoDaddy Inc. As a result, these claims should be dismissed as against GoDaddy Inc.

Moreover, Plaintiffs cannot plausibly allege an "improper" interference where the purportedly "improper" act—removing the Domains from Plaintiffs' respective accounts to correct an error or mistake, and issuing Plaintiffs refunds (plus additional in-store credits)—were exercises of GoDaddy's express contractual rights. *See, e.g.*, *Smith v. Chrysler Grp. LLC*, 2014 WL 1577515, at *11 (D. Ariz. Apr. 19, 2014) (granting motion to dismiss because "[a]lthough [defendant] intentionally caused the termination of [plaintiff's] contractual relationship with the [third party], it cannot be said that [defendant] tortuously interfered with the contract when it exercised a power expressly granted to it by the contract"); *Dopadre v. City of Sierra Vista*, 2019 WL 4014099, at *3 (Ariz. Ct. App. Aug. 26, 2019) (action that was "specifically authorized" was not "improper" and not actionable for intentional interference with business expectancy claim); *see also Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157,

---

[1] Plaintiffs asserted two tortious interference claims, *see* Doc. 18 ¶¶ 91–102, but "Arizona recognizes one tort only: tortious interference with a contract, which requires proof of 'a contractual relationship *or* business expectancy.'" *Set Enters. Inc. v. 132297 Ontario Inc.*, 2014 WL 11515702, at *2 n.3 (D. Ariz. Apr. 24, 2014) (quoting *Miller*, 104 P.3d at 202).

**GODADDY INC. AND GODADDY.COM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

1166 (9th Cir. 1997) (alleged interference was not improper where the defendant "exercised its express contractual right"). Accordingly, these claims must be dismissed with prejudice.

***Gross Negligence, Negligence, and Negligent Misrepresentation (Counts 8-10)*:** Plaintiffs' negligence claims fail because they are premised on an alleged breach of contract. "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Lorenz v. State*, 364 P.3d 475, 477 (Ariz. Ct. App. 2015) (citation omitted). As the Arizona Supreme Court has made clear, "duty is not presumed," and "in every negligence case, the plaintiff bears the burden of proving the existence of a duty." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827 (Ariz. 2018); *see also Unknown Party v. Arizona Bd. of Regents*, 2021 WL 1967392, at *7 (D. Ariz. May 17, 2021) (gross negligence claim failed where plaintiff "has not identified any Arizona appellate case recognizing (or suggesting) that" duty of care was owed in comparable context). Importantly, "a breach of contract is not a tort unless the law imposes a duty on the relationship created by the contract which exists **apart from the contract**." *Zinn v. ADT LLC*, 2018 WL 526899, at *2 (D. Ariz. Jan. 24, 2018) (emphasis added) (dismissing negligence claim because "Arizona imposes no duty on Defendant independent of the Contract").

Here, GoDaddy owed Plaintiffs no duty of care, separate and apart from any alleged contractual duties.[2] *See Engage BDR v. GoDaddy*, 2021 WL 8820555, at *3 (C.D. Cal. Sept. 23, 2021) (plaintiffs failed to state negligence claim because GoDaddy's alleged duties as registrar "all arise from the registration and renewal contracts underlying Plaintiffs' contractual claims"); *Size, Inc. v. Network Sols., Inc.*, 255 F. Supp. 2d 568, 574 (E.D. Va. 2003) (dismissing claim that registrar was negligent in transferring a domain name because registrar did not owe "broader legal duties than were covered explicitly in the contract"). Accordingly, Plaintiffs cannot plausibly allege the existence of a non-contractual duty, and the duplicative negligence claims fail as a matter of law. *See Ireland Miller, Inc. v. Shee Atika Holdings Phoenix, LLC*, 2010 WL 2743653, at *3 (D. Ariz. July 12, 2010) (dismissing "claims based in negligence [that] are duplicative of [plaintiff's] breach of contract claim" because

---

[2] Plaintiffs do not allege GoDaddy Inc. owed Plaintiffs any duty whatsoever.

negligence claims alleging that "Seller breached a duty set forth in the parties' agreement merely is another attempt to plead a breach of contract claim").

### 4. Plaintiffs' Estoppel Claim Fails As A Matter Of Law (Count 11)

Plaintiffs' "estoppel" claim must be dismissed because Plaintiffs specifically and unambiguously pleaded the existence of written contracts that govern the parties' relationship. *See* Doc. 18 ¶¶ 72, 82. Promissory estoppel is equitable in nature and used only when the plaintiff cannot establish an otherwise enforceable contract. *See Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 114 P.3d 835, 843–844 (Ariz. Ct. App. 2005). Arizona law does not permit a party to bring a promissory estoppel claim where there is an express agreement between the parties that covers the subject matter at issue, and Plaintiffs cannot use equitable claims to get a second attempt on their contract claims. *See Bowman v. Honeywell Int'l, Inc.*, 438 F. App'x 613, 615 (9th Cir. 2011) (affirming dismissal of promissory estoppel claim because "Arizona law prohibits an action based on the promissory estoppel theory of liability if there is an express, written contract on the same subject matter") (citing *Chanay v. Chittenden*, 563 P.2d 287, 290 (Ariz. Ct. App. 1977)). Accordingly, Plaintiffs' estoppel claim fails as a matter of law.

### 5. Plaintiffs' "Claim" For An Injunction Must Be Dismissed (Count 12)

Plaintiffs' separate "claim" for injunctive relief in Count 12 is not a cognizable as a matter of law. As this Court explained in *Cruz v. Cameron Fin. Grp. Inc.*, "injunctions and declaratory judgments are *remedies* for underlying causes of actions. They are not causes of action in their own right—and therefore cannot be pleaded as such." 2024 WL 326957, at *4 (D. Ariz. Jan. 29, 2024) (collecting cases); *see Christensen v. Galliway*, 2024 WL 3010934, at *4 (D. Ariz. June 14, 2024) (dismissing "'Injunction' cause of action" because "[a]n injunction is a remedy, not a separate claim or cause of action"). Accordingly, any "claim" for injunction is deficient as a matter of law and should be dismissed with prejudice.

### C. Plaintiffs' Request For Punitive Damages Should Be Dismissed Or Struck

Plaintiffs' request for punitive damages (Doc. 18 ¶¶ 132–134) fails as a matter of law for at least two reasons. *First*, the UTOS forecloses this request, as it: (a) bars claims for

punitive or consequential damages, and (b) caps GoDaddy's total aggregate liability at $10,000. *See* Doc. 26-1 § 20. Indeed, the UTOS specifically provides that in no event would GoDaddy be liable for punitive or consequential damages for any loss or damage of any kind, whether sounding in contract, tort, or any other legal or equitable theory. *See id.*

*Second*, punitive damages are limited to the most egregious wrongs where there is clear and convincing evidence of "aggravated, outrageous, malicious, or fraudulent" conduct "combined with an evil mind." *See Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 681 (Ariz. 1986). The crux of Plaintiffs' claims, unadorned by hyperbole, purport to allege a mere breach of contract (even though the parties' contracts expressly permitted the conduct at issue). The FAC lacks any factual allegations to meet this high threshold, much less to allege even a run-of-the-mill tort. *See Davis v. Bank of Am. Corp.*, 2012 WL 5984939, at *3 (D. Ariz. Nov. 28, 2012) ("Under Arizona law, punitive damages and damages for non-economic injuries, like emotional distress, may not be recovered for breach of contract."). Plaintiffs' request for punitive damages should be dismissed or struck.

## V.   CONCLUSION

As set forth above, Plaintiffs failed to state a claim upon which relief can be granted and no amendment could cure these deficiencies. As such, GoDaddy and GoDaddy Inc. respectfully request that this Court dismiss the FAC in its entirety with prejudice.

Dated:  October 9, 2024

**COZEN O'CONNOR**
Jeffrey M. Monhait

By: *s/Jeffrey M. Monhait*
       Jeffrey M. Monhait

Attorneys for Defendants
GoDaddy Inc. and GoDaddy.com, LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies, under penalty of perjury under the laws of the State of Arizona that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Jeffrey J. Neuman<br>JJN SOLUTIONS, LLC<br>9445 Brenner Ct.<br>Vienna, VA 22180<br>(202) 549-5079<br>jeff@jjnsolutions.com | Isacc S. Crum<br>MESSNER REEVES LLP<br>7250 N. 16th St., Suite 410<br>Phoenix, AZ 85020<br>(602) 457-5059<br>icrum@messner.com |
| Counsel for Plaintiffs | Counsel for Plaintiffs |

SIGNED AND DATED this 9th day of October, 2024 at Philadelphia, Pennsylvania.

COZEN O'CONNOR

By:  *s/ Jeffrey M. Monhait*
      Jeffrey M. Monhait

**GODADDY INC. AND GODADDY.COM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**