Jeffrey M. Monhait, AZ Bar No. 038707
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA  19103
Telephone: (215) 665-2084
Email:        jmonhait@cozen.com

Attorneys for Defendants
GoDaddy Inc., GoDaddy.com, LLC,
and 123-Reg Limited

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Crisby Studio AB, a Swedish limited liability company, Niklas Thorin, a Swedish resident, and Prime Loyalty, a New York limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>GoDaddy, Inc. a Delaware corporation, GoDaddy.com, LLC, a Delaware corporation, and 123-Reg Limited, a UK company,<br><br>Defendants. | Case No.: 2:24-cv-02165-SMB<br><br>**DEFENDANT 123-REG LIMITED'S OPPOSITION TO CRISBY'S MOTION FOR PRELIMINARY INJUNCTION AND PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

## I. INTRODUCTION

Defendant 123-Reg Limited ("123-Reg") opposes Plaintiffs Crisby Studio AB and Niklas Thorin's ("Thorin") (together, "Crisby") Motion for a Preliminary Injunction (Doc. 2) and Plaintiff Prime Loyalty, LLC's ("Prime") Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 20) (together, the "Motions"). Plaintiffs allege they each purchased a domain name registration through GoDaddy.com, LLC's ("GoDaddy") auction services—calor.com for Crisby (the "Calor Domain"), and butane.com for Prime (the "Butane Domain") (collectively, the "Domains")—and two months later, GoDaddy unwound the transactions because the Domains were auctioned in error. GoDaddy refunded the full purchase price and gave Plaintiffs additional in-store credit, and Plaintiffs attached to the First Amended Complaint ("FAC") their contracts with GoDaddy that permitted GoDaddy to cancel or transfer a domain registration to correct such alleged mistakes or errors. Nevertheless, Plaintiffs filed this misguided and scattershot lawsuit against GoDaddy, GoDaddy Inc. (the sole member of GoDaddy's corporate grandparent, and an entity that has no alleged involvement in this action), and 123-Reg, a United Kingdom ("UK") entity that is merely alleged to be the registrar of the Domains and a subsidiary of GoDaddy Inc. In the Motions, Plaintiffs seek to enjoin the defendants from allowing the Domains to expire or be transferred.

Plaintiffs have no basis to bring a claim against 123-Reg, let alone seek injunctive relief against 123-Reg. ***First***, 123-Reg is not subject to personal jurisdiction in this forum. ***Second***, Plaintiffs have not shown a likelihood of success on their claims as to 123-Reg because: (a) Plaintiffs failed to state any claim against 123-Reg; and (b) Plaintiffs' claims fail as a matter of law. ***Third***, Plaintiffs failed to show an injunction is necessary to prevent irreparable harm because the purported "harm": (a) ***occurred months before Plaintiffs filed the Motions***; (b) is speculative and unsupported by evidence; (c) would not be remedied by the requested relief; and (d) is compensable with money damages. ***Fourth***, Plaintiffs failed to demonstrate that the balance of equities tips in their favor because an injunction would: (a) be ineffective, and thus not aid Plaintiffs; (b) purport to enjoin 123-Reg even though it is not subject to personal jurisdiction in this forum. ***Fifth***, a preliminary injunction is against the public interest because

1

**123-REG LIMITED'S OPPOSITION TO CRISBY'S MOTION FOR PRELIMINARY INJUNCTION AND PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER**

it would impede registrars from correcting errors or mistakes affecting domain registrations. The Motions must be denied.

## II.     RELEVANT FACTUAL BACKGROUND

### A.  Plaintiffs' Allegations Against GoDaddy

Crisby alleges that Thorin, a GoDaddy customer, won an auction for the Calor Domain with an $11,405 bid, and paid on April 5, 2024. Doc. 18 ¶¶ 27–29; Doc. 3 ¶¶ 3–5. Crisby alleges, based solely on hearsay, that on May 27, 2024, they executed a joint venture agreement ("JVA") with non-party QLSC Consulting S.R.L. ("QLSC"), a Romanian company, "for the purpose of developing and launching a dating app." Doc. 18 ¶ 32; Doc. 3 ¶ 8. Crisby alleges they warranted that they "own[ed]" the Calor Domain, and agreed to "transfer ownership" of it "to the Joint Venture upon the achievement of certain milestones." Doc. 18 ¶ 33; Doc. 3 ¶ 9.

Crisby alleges that on May 29, 2024, a GoDaddy sales manager contacted Thorin regarding the Calor Domain, and Thorin allegedly sought "a high six-figure amount" for the Calor Domain. Doc. 18 ¶¶ 42, 44; Doc. 3 ¶¶ 10-11. Crisby alleges that on June 4, 2024, GoDaddy told Thorin that the Domain was mistakenly listed for auction "due to an unexpected error" and should never have been auctioned. Doc. 18 ¶ 46; Doc. 3 ¶ 12. Crisby alleges that GoDaddy removed the Calor Domain from Thorin's account to correct the error, returned it to the original registrant, and gave Thorin a full refund plus $350 in-store credit. *See* Doc. 18 ¶¶ 15, 46, 55; Doc. 3 ¶ 12. Crisby alleges that QLSC then terminated the JVA. *See* Doc. 18 ¶ 48.

Prime alleges its owner, non-party Jeff Garbutt ("Garbutt"), is a GoDaddy customer that won an auction for the Butane Domain with a $19,755 bid on March 31, 2024. Doc. 18 ¶¶ 36–37; Doc. 20-1 ¶¶ 1–2, 6–8. Prime alleges, based solely on hearsay, that Garbutt "secured" funding from non-party Mike Giordano ("Giordano") to bid in the auction, and that they agreed to establish a "joint white-label butane business" that Giordano would manage. Doc. 18 ¶¶ 35; Doc. 20-1 ¶¶ 4–5. Prime alleges that on April 7, 2024, Garbutt purchased additional services and registered the domain names butane.net and butane.org, for $7,024.34. Doc. 18 ¶ 38; Doc. 20-1 ¶ 9. Prime also alleges that Garbutt "research[ed]" butane products,

and Giordano began "contractual negotiations" in his network for the sale of such products. Doc. 18 ¶ 38; Doc. 20-1 ¶¶ 12–13.

Prime alleges that on May 29, 2024, a GoDaddy sales manager contacted Garbutt regarding the Butane Domain. Doc. 18 ¶ 43; Doc. 20-1 ¶ 14. Prime alleges that on June 4, 2024, GoDaddy told Garbutt that the Butane Domain was mistakenly listed for auction "due to an unexpected error," and that GoDaddy removed the Butane Domain from Garbutt's account to correct the error, and gave Garbutt a full refund plus a $7,350 in-store credit to cover, among other things, the butane.net and butane.org domain names (so Garbutt thus obtained those registrations for free). Doc. 18 ¶ 46; Doc. 20-1 ¶ 16.

### B. Plaintiffs' Contracts With GoDaddy

Plaintiffs repeatedly admitted that they entered into written agreements with GoDaddy, including GoDaddy's Domain Name Registration Agreement ("DNRA"), Auctions Membership Agreement ("AMA"), and Universal Terms of Service Agreement ("UTOS") (which is also expressly incorporated by reference in the DNRA and AMA). *See* Doc. 18 ¶¶ 72, 82; Doc. 3 ¶¶ 3, 5; Doc. 20-1 ¶¶ 2, 7–8; Doc. 18-1 at Ex. N (the UTOS "is incorporated [into the AMA] by reference"), § 1; Ex. O § 1 (same for the DNRA), *see also* Doc. 18-1 at Exs. E, 4, 5 ("during the checkout process, you agreed to [the UTOS]"). Plaintiffs do not allege that they have any agreement or contract with 123-Reg.

### C. Plaintiffs' Allegations Against 123-Reg

123-Reg is a company registered in England and Wales, with its registered office in the United Kingdom ("UK"). *See* Doc. 18-1, Ex. A. Plaintiffs' only allegations as to 123-Reg are: (a) the original registrant of the Domains was non-party Calor Gas Ltd ("Calor"); (b) Calor registered the Domains with 123-Reg; (c) a technical error prevented Calor from renewing the Domains; and (d) the Domains were returned to Calor. *See* Doc. 18 ¶¶ 15, 46, 55. Aside from alleging that Calor registered the Domains with 123-Reg in the UK, Plaintiffs failed to allege *any* relevant conduct as to 123-Reg. *See id.*

### D. The Instant Litigation

Crisby commenced this action by filing a Complaint on August 23, 2024. Doc. 1. On September 25, 2024, Crisby filed the FAC purportedly to add Prime as a named plaintiff. Doc. 18. In the FAC, Plaintiffs asserted 12 causes of action, including: (a) conversion and trespass to chattel (Counts 1–2); (b) contract claims (Counts 3–4); (c) tortious interference (Counts 6–7, but only Crisby asserted Count 7); (d) negligence claims (Counts 8–10); (e) estoppel (Count 11); and (f) a claim for injunctive relief (Count 12).[1] *See* Doc. 18 ¶¶ 56–131. Crisby and Prime purport to assert the same claims even though their allegations arise out of different transactions concerning different domain names.

Before 123-Reg was served or entered an appearance in this action, GoDaddy and GoDaddy Inc. filed an Opposition to the Crisby Motion for Preliminary Injunction on September 27, 2024 (Doc. 25), and an Opposition to the Prime Motion for TRO on October 3, 2024 (Doc. 27) (together, "GoDaddy and GoDaddy Inc.'s Oppositions"). The Court held a hearing regarding the Crisby Motion for Preliminary Injunction as to GoDaddy and GoDaddy Inc. on October 15, 2024, and that matter remains pending. *See* Doc. 42. On October 22, 2024, the parties submitted briefing regarding the Defendants' challenge to the Court's subject matter jurisdiction, and that matter remains pending as well. *See* Doc. 48-49.

## III.   LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotations and citation omitted); accord *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). "A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Identity Intel. Grp. LLC v. Rocket Mortg. LLC*, 2022 WL 17903681, at *2 (D. Ariz. Sept. 28, 2022) (citing *Winter*, 555 U.S. at 20).

---

[1] Plaintiffs also asserted a claim for breach of the covenant of good faith and fair dealing (Count 5) against the "GoDaddy Defendants" alone. *See* Doc. 18 ¶¶ 86–90.

Courts may balance these factors under a "sliding scale" approach, which allows a plaintiff to obtain an injunction where it has raised "serious questions going to the merits"—provided that plaintiff also shows "a balance of hardships that tips sharply towards the plaintiff" and "a likelihood of irreparable injury and that the injunction is in the public interest." *Dev. Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011) (internal quotations and citation omitted). The "sliding scale" approach "does not relieve the movant of the burden to satisfy all four prongs for the issuance of a preliminary injunction," *Democratic Nat'l Comm. v. Reagan*, 2018 WL 10455189, at *1 (D. Ariz. May 25, 2018), and "weakness in a plaintiff's showing of harm cannot be offset by a stronger showing on the merits of the underlying legal claim." *Doe v. Snyder*, 28 F.4th 103, 112 n.4 (9th Cir. 2022).

## IV.   ARGUMENT

### A. 123-Reg Is Not Subject To Personal Jurisdiction In Arizona

"A district court lacks authority to grant a preliminary injunction when it lacks personal jurisdiction over defendants." *Viral DRM LLC v. YouTube Uploadeers Listed on Schedule A*, 2024 WL 189013, at *1 (N.D. Cal. Jan. 17, 2024) (citation omitted); *see Butte Min. PLC v. Smith*, 24 F.3d 245 (9th Cir. 1994) ("[It] would be inappropriate for a district court to enter any injunction … without first considering whether personal jurisdiction could be asserted over the defendant."). As such, "personal jurisdiction is a threshold issue" for purposes of a preliminary injunction analysis. *See Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *2 (N.D. Cal. Jan. 13, 2020), *aff'd*, 2021 WL 963777 (9th Cir. Mar. 15, 2021).

Plaintiffs "bear[] the burden of "establishing the court's personal jurisdiction over a defendant." *Viral DRM LLC*, 2024 WL 189013, at *1 (internal quotations and brackets omitted) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). "Arizona's long-arm jurisdictional statute is coextensive with federal due process," and thus the personal jurisdiction inquiry under Arizona law "is identical to that of federal due process." *Boehm v. Airbus Helicopters Inc.*, 527 F. Supp. 3d 1112, 1117 (D. Ariz. 2020) (citing Ariz. R. Civ. P. 4.2(a)). The "constitutional touchstone" of a jurisdictional due process analysis is whether the nonresident defendant has purposefully established "certain minimum contacts with the forum

5

**123-REG LIMITED'S OPPOSITION TO CRISBY'S MOTION FOR PRELIMINARY INJUNCTION AND PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER**

such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (cleaned up). To prove such "minimum contacts," Plaintiffs must demonstrate either general or specific jurisdiction. *See Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

### 1. Plaintiffs Failed To Make A Prima Facie Showing On Jurisdiction

Plaintiffs did not even attempt to allege that 123-Reg had sufficient contacts with Arizona to establish personal jurisdiction. To make a prima facie showing on jurisdiction, Plaintiffs must demonstrate jurisdictional facts "that, if true, would support jurisdiction over the defendant." *Tanga.com LLC v. Gordon*, 2015 WL 533264, at *1 (D. Ariz. Feb. 9, 2015) (citation omitted). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy" a plaintiff's burden to establish personal jurisdiction over a defendant. *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 943 (N.D. Cal. 2014) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)). Moreover, "[w]hen there are multiple defendants, the jurisdictional inquiry must decouple defendants, considering whether each individual defendant has had sufficient 'minimum contacts' with the forum state to justify an exercise of jurisdiction." *GeoSolutions B.V. v. Sina.com Online*, 700 F. Supp. 3d 821, 826–827 (N.D. Cal. 2023) (internal quotations and citation omitted). In cases involving related business entities, "a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).

Reg-123 is a UK company with a UK registered office. *See* Doc. 18-1, Ex. A. Plaintiffs failed to identify any purported contacts with Arizona sufficient to establish personal jurisdiction over 123-Reg, *see generally* Doc. 2, 18, 20, and Courts routinely dismiss complaints that do not contain such allegations. *See, e.g., Epes v. Sidden*, 2023 WL 5318469, at *1 (9th Cir. Aug. 18, 2023) (no error in dismissal for lack of personal jurisdiction where the "complaint's jurisdictional allegations are facially deficient"); *Bryfogle v. Livingston*, 2022 WL 2238182, at *4 (D. Ariz. June 22, 2022) ("Plaintiff has not made a prima facie showing

that the minimum contacts exist for this Court to exercise personal jurisdiction" over defendants); *Discovery Land Co. LLC v. Discovery Glob. LLC*, 2021 WL 148641, at *5 (D. Ariz. Jan. 15, 2021) ("the Court will not construe the Complaint's bare allegations… as sufficient to demonstrate personal jurisdiction."); *Joudeh v. Beck*, 2018 WL 3364653, at *3 (D. Ariz. July 10, 2018); *Vollmer v. Present*, 2011 WL 11415, at *3 (D. Ariz. Jan. 4, 2011).

Plaintiffs' failure to make a prima facie showing of jurisdiction warrants denying their requests for injunctive relief (and dismissing their claims) as to 123-Reg.

### 2. Plaintiffs Cannot Raise New Jurisdictional Arguments On Reply

Plaintiffs have repeatedly attempted to raise new, unpled arguments for the first time in reply briefs. *See* Doc. 29 at 8–10 (raising for the first time unpled personal jurisdiction arguments regarding 123-Reg); Doc. 37 at 8–10 (same). To the extent Plaintiffs again seek to raise such unpled jurisdictional arguments for the first time in a reply, the Court should deem them waived and refuse to consider them. *See CDK Glob. LLC v. Brnovich*, 2020 WL 4260506, at *4 n.10 (D. Ariz. July 24, 2020) (refusing to consider arguments on motion for preliminary injunction that were raised for the first time in a reply brief because ordinarily "arguments raised for the first time in a reply brief or at the hearing on a motion are disregarded"), *aff'd*, 16 F.4th 1266 (9th Cir. 2021); *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1060 n.1 (D. Ariz. 2018) (same).

### 3. The Court Lacks Personal Jurisdiction Over 123-Reg

Even if the Court were to consider any new jurisdictional arguments raised for the first time in any reply brief, 123-Reg is not subject to personal jurisdiction in Arizona.

*First*, there is no general jurisdiction over 123-Reg in Arizona. A court has general personal jurisdiction over a defendant only if that defendant's "affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State." *EZScreenPrint LLC v. SmallDog Prints LLC*, 2018 WL 3729745, at *1 (D. Ariz. Aug. 6, 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). As the Supreme Court has made clear, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG*, 571 U.S. at 122. Except in

"exceptional" circumstances, a defendant corporation is subject to general jurisdiction only in its state of incorporation or principal place of business. *See id.* at 139 n.19. Even substantial in-state business does not ordinarily suffice to permit the assertion of jurisdiction over a foreign corporation for claims unrelated to activity in the state. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414; *accord Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) ("This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.").

Here, Plaintiffs have not alleged—and cannot allege—any basis for finding that 123-Reg is subject to general jurisdiction in Arizona. 123-Reg is a UK company with a UK registered office. Plaintiffs have not alleged that 123-Reg has any physical presence in Arizona, let alone the "constant and pervasive" affiliations that would make it "essentially at home" in Arizona (rather than in the UK). *See EZScreenPrint LLC*, 2018 WL 3729745, at *1.

*Second*, the Court lacks specific jurisdiction over 123-Reg. To assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction, Courts use the following three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*East v. Cnty. of Riverside*, 2024 WL 1012975, at *2 (D. Ariz. Mar. 8, 2024). Plaintiffs bear the burden of establishing the first two prongs of this test. *See id.*

Here, 123-Reg's alleged conduct occurred in the UK, not Arizona. The only relevant acts alleged regarding 123-Reg—the registration of the Domains—occurred in the UK when Calor (a UK company) registered them with 123-Reg. *See* Doc. 18 ¶¶ 15, 46, 55. Plaintiffs

**123-REG LIMITED'S OPPOSITION TO CRISBY'S MOTION FOR PRELIMINARY INJUNCTION AND PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER**

1  failed to allege that 123-Reg had any relevant contact with this forum, and Plaintiffs cannot
2  remedy this defect in their pleadings with unalleged, conclusory contentions in reply briefs
3  that 123-Reg "sent" expired domain names "to GoDaddy in Arizona to be auctioned off." *See*
4  Doc. 29 at 10. For purposes of specific jurisdiction, "the connection to the forum state must be
5  analyzed with regard to the defendant's contacts with the forum itself, not with persons
6  residing there." *X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 2024 WL 1245993, at *13
7  (N.D. Cal. Mar. 25, 2024) (internal quotations omitted). Plaintiffs' speculative conjecture that
8  a hypothetical contract between 123-Reg and GoDaddy is "likely governed under" Arizona
9  law misses the mark. *See* Doc. 29 at 10. The relevant inquiry is **123-Reg's** contacts with the
10 forum, and the mere fact that GoDaddy is headquartered in Arizona does not show that 123-
11 Reg "targeted" any "Arizona customers" specifically. *See Beauchamp v. Muise*, 2024 WL
12 4364058, at *3 (D. Ariz. Oct. 1, 2024) (no specific jurisdiction over defendant,
13 notwithstanding defendants' contacts with plaintiff in the forum state because the forum-
14 related conduct was not "expressly or especially made to Arizona customers"); *see also Dinan*
15 *& Co. LLC v. Deaconess Associations Inc.*, 2022 WL 375852, at *4 (D. Ariz. Feb. 8, 2022)
16 ("a contract alone does not automatically establish minimum contacts" in the forum state).
17 Moreover, Plaintiffs' claims do not arise or relate to 123-Reg's purported forum-related
18 activity. Absent such a connection, "specific jurisdiction is lacking regardless of the extent of
19 a defendant's unconnected activities in the State." *Pinnacle Emp. Servs., Inc. v. Pinnacle*
20 *Holding Co., LLC*, 2024 WL 382140, at *5 (E.D. Cal. Jan. 31, 2024) (quoting *Bristol-Myers*
21 *Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 264 (2017)); *see Inter123 Corp. v.*
22 *Ghaith*, 2014 WL 1343508, at *3 (D. Ariz. Apr. 4, 2014) ("[E]ven if Defendant's contacts and
23 agreements with GoDaddy could be viewed as Defendant having personally availed himself
24 of the privilege of doing business in Arizona, he did so with respect to his business dealings
25 with GoDaddy and any potential future dispute with GoDaddy, not with respect to the contract
26 with Plaintiff at issue in this case.").
27      *Finally*, the fact that GoDaddy and 123-Reg are indirect subsidiaries of GoDaddy Inc.
28 provides no basis to attribute GoDaddy's forum-related contacts to 123-Reg for purposes of

general or specific jurisdiction. Rather, "a court may attribute a parent company's contacts with the forum state to its foreign subsidiary" for purposes of exercising jurisdiction over the subsidiary only "upon a showing that the subsidiary is an alter ego of its parent." *Ranza*, 793 F.3d at 1065. Under the alter ego test, Plaintiffs must show "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Cornelis v. B & J Smith Assocs. LLC*, 2013 WL 6795969, at *4 (D. Ariz. Dec. 20, 2013). Moreover, to satisfy the "unity of interest and ownership" prong, Plaintiffs must show that GoDaddy controls 123-Reg "to such a degree as to render the latter the mere instrumentality of the former" *Ranza*, 793 F.3d at 1065. There must be "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business." *Id.* (internal quotations and citation omitted). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.* (citation omitted).

Plaintiffs have never purported to allege that 123-Reg is an "alter ego" of GoDaddy, let alone that GoDaddy "exert[s] substantially total control" over 123-Reg such that it is "a mere instrumentality" of GoDaddy. *See id. See also Whaleco Inc. v. TemuExpress.com*, 2024 WL 1366933, at *5 (D. Ariz. Apr. 1, 2024) (allegations that GoDaddy "owned" a corporate affiliate, responded to complaints directed at the affiliate, and had "an overlap" in operations failed "to give rise to the plausible inference that the separate personalities of GoDaddy and DBP have ceased to existed") (cleaned up); *McGeachy v. Pinto Valley Mining Corp.*, 2017 WL 3130639, at *4 (D. Ariz. July 24, 2017) ("It is not enough that the parent wholly owns the subsidiary or that both corporations share management personnel" to establish alter ego liability). Accordingly, Plaintiffs failed to show that 123-Reg is subject to personal jurisdiction in this forum, and their requested injunctive relief must be denied.

### B. Plaintiffs Are Unlikely To Succeed On the Merits

The "most important" factor and "threshold inquiry" on an injunction request is whether the plaintiff is likely to succeed on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). "[I]f a plaintiff fails to show that he has some chance on the merits, that ends the

matter." *Dev. Servs. Network*, 666 F.3d at 544. As a threshold matter, Plaintiffs failed to show a likelihood of success on their claims for conversion, trespass to chattel, negligence, negligent misrepresentation, and estoppel, as Plaintiffs did not mention those claims in their Motions. *See* Doc. 2, Doc. 20. Even setting that aside, Plaintiffs failed to show a likelihood of success on their claims because: (a) Plaintiffs offered no relevant factual allegations to state a claim against 123-Reg; and (b) Plaintiffs' claims all fail as a matter of law as to all of the Defendants, for, among other reasons, those set forth in GoDaddy and GoDaddy Inc.'s Oppositions. *See* Doc. 25 at 9–13; Doc. 27 at 9–13.

### 1. Plaintiffs Cannot Succeed On A Claim For Breach Of Contract

To prevail on a contract claim, Plaintiffs must prove: (1) the existence of a contract between each Plaintiff and the named defendants, (2) a breach of the contract by the named Defendants, and (3) resulting damages to Plaintiffs. *See Gillard v. Good Earth Power AZ LLC*, 2019 WL 1280946, at *4 (D. Ariz. Mar. 19, 2019). Plaintiffs fail to allege any of these elements as to 123-Reg. Plaintiffs allege that they entered into written agreements with GoDaddy— including the UTOS, DNRA, and AMA. Plaintiffs do not allege any contract with 123-Reg, any contractual breach, or any resulting damages. As a result, Plaintiffs are unlikely to succeed on their contract claims.

### 2. Plaintiffs Cannot Succeed On Their Tort Claims

Plaintiffs failed to allege any of the requisite elements for any tort claim as to 123-Reg, and each of Plaintiffs' tort claims otherwise fails as a matter of law.

***Conversion and Trespass to Chattel*:** Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005). Trespass to chattel has the same elements, and differs only in the measure of damages. *See Pistor v. Garcia,* 2014 WL 116391, at *7 n.3 (D. Ariz. Jan. 13, 2014). Plaintiffs' claims fail for at least two reasons. *First*, domains cannot be the subject of a conversion or trespass to chattel claim. *See, e.g., Hao v. GoDaddy.com, LLC*, 2023 WL 3078660, at *1–2 (D. Ariz. Apr. 25, 2023) ("[A] domain name

is intangible property that cannot be the object of a conversion claim[.]"); *Rolle v. Robel*, 2024 WL 342457, at *5 (D. Ariz. Jan. 30, 2024) (same). *Second*, Plaintiffs merely allege that the registrant of the Domains, Calor, registered the Domains with 123-Reg. *See* Doc. 18 ¶¶ 15, 46, 55. Plaintiffs do not allege that 123-Reg exercised dominion or control over the Domains.

***Tortious Interference With Prospective Economic Advantage and Contract*:** To prevail on a tortious interference claim, Plaintiffs must prove: (1) "the existence of a valid contractual relationship or business expectancy;" (2) "the interferer's knowledge of the relationship or expectancy;" (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy;" and (4) "resultant damage to the party whose relationship or expectancy has been disrupted." *Miller*, 104 P.3d at 202. In addition, "[t]he interference must be 'improper' before liability will attach." *Id.* Plaintiffs failed to allege such a claim as to 123-Reg. *First*, Plaintiffs did not (and cannot) allege that 123-Reg had knowledge of Plaintiffs' purported contractual relationship or business expectancy. *Second*, Plaintiffs' sole allegation as to 123-Reg is that Calor registered the Domains with 123-Reg. Plaintiffs do not allege any intentional act by 123-Reg, *let alone* any improper act constituting intentional interference with Plaintiffs' unknown business relationships. *See* Doc. 18 ¶¶ 15, 46, 55.

***Gross Negligence, Negligence, and Negligent Misrepresentation*:** As with Plaintiffs' other tort claims, Plaintiffs fail to allege any requisite element as to 123-Reg, and thus cannot prevail on a negligence claim. Plaintiffs do not, and cannot, allege 123-Reg owed them a duty of care—let alone that 123-Reg breached that non-existent duty or proximately caused Plaintiffs' alleged damages. "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained." *Lorenz v. State*, 364 P.3d 475, 477 (Ariz. Ct. App. 2015) (citation omitted). As the Arizona Supreme Court has made clear, "duty is not presumed," and "in every negligence case, the plaintiff bears the burden of proving the existence of a duty." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827 (Ariz. 2018); *see also Unknown Party v. Arizona Bd. of Regents*, 2021 WL 1967392, at *7 (D. Ariz. May 17, 2021) (gross negligence claim failed where plaintiff "has not identified any Arizona appellate case recognizing (or suggesting) that" duty of care was owed in comparable context).

At most, Plaintiffs allege a contractual dispute with *GoDaddy* (not 123-Reg), but Plaintiffs cannot transform a purported contract claim into a tort claim against any defendant, much less 123-Reg, which owed Plaintiffs no duty whatsoever. *See* Doc. 25 at 12–13; Doc. 27 at 12–13; *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 411–12 (Ariz. Ct. App. 2014) ("There must be a duty owed and a breach of that duty before one may be charged with the negligent violation of that duty.") (cleaned up). Moreover, Plaintiffs cannot show that 123-Reg engaged in conduct that created "an unreasonable risk of bodily harm to others" necessary to show gross negligence, *see Walls v. Arizona Dep't of Pub. Safety*, 826 P.2d 1217, 1221 (Ariz. Ct. App. 1991), nor that 123-Reg provided any "false information in a business transaction" to Plaintiffs that it intended for them to rely on necessary to prevail on a claim for negligent misrepresentation. *See KB Home Tucson*, 340 P.3d at 412 n.7.

### 3. Plaintiffs Cannot Prevail On An Estoppel Claim

A plaintiff asserting a promissory estoppel claim must show that a defendant "made a promise," "should have reasonably foreseen that [the plaintiff] would rely on that promise;" and that the plaintiff "actually relied on the promise to his detriment." *Higginbottom v. State*, 203 Ariz. 139, 144, 51 P.3d 972, 977 (Ct. App. 2002). Plaintiffs failed to allege any of these elements as to 123-Reg. Plaintiffs cannot show that 123-Reg made any promise to any Plaintiff, or that 123-Reg should have reasonably foreseen that Plaintiffs would rely or did rely on any such nonexistent promise. Moreover, Plaintiffs cannot use equitable claims to get a second attempt at their contract claims against GoDaddy. *See* Doc. 25 at 13; Doc. 27 at 13.

### 4. Plaintiffs Cannot Prevail On A Separate "Claim" For Injunction

Plaintiffs cannot prevail on their "claims" for injunctive relief because injunctions "are *remedies*.... They are not causes of action in their own right—and therefore cannot be pleaded as such." *See Cruz v. Cameron Fin. Grp. Inc.*, 2024 WL 326957, at *4 (D. Ariz. Jan. 29, 2024).

### C. Plaintiffs Failed To Demonstrate A Likelihood Of Irreparable Harm

"Irreparable harm is harm for which there is no adequate remedy at law, such as money damages." *TDBBS LLC v. Ethical Prod. Inc.*, 2019 WL 1242961, at *6 (D. Ariz. Mar. 18, 2019) (citing *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). A

plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction" and not merely "a possibility." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 22). Irreparable harm cannot be based on "unsupported and conclusory statements regarding harm"—rather, it must be "grounded in … evidence" and based on "factual findings." *See id.* at 1250. Plaintiffs cannot meet this burden.

*First*, Plaintiffs do not contend they are likely to suffer *future* irreparable harm absent an injunction—Crisby and Prime's only purported "harm" occurred months **before** they filed motions seeking injunctive relief. As this Court has recognized, "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *See TDBBS*, 2019 WL 1242961, at *6.

Here, the alleged "harms" occurred months ago. Crisby alleges—based solely on hearsay—that the loss of the Calor Domain placed the hypothetical development of a "dating app" "in jeopardy," and "caused QLSC to terminate the [one-week-old JVA] with Plaintiff." *See* Doc. 2 at 14; Doc. 3 ¶¶ 14–15; Doc. 18 ¶ 48. Similarly, Prime alleges—based solely on hearsay—that its proposed new white-label butane business "ended," causing it to lose unexplained "development and marketing costs." *See* Doc. 18 ¶¶ 48, 55; Doc. 20-1 ¶ 19. These alleged past harms do not suggest that Plaintiffs are likely to suffer *future* irreparable harm absent an injunction. *See TDBBS*, 2019 WL 1242961, at *7 (no irreparable harm where the alleged "harm has already occurred, if at all" because "preliminary injunctions are not meant to remedy past harms"); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (reversing grant of preliminary injunction where the alleged injury was "too remote and speculative," because "[a]t a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it **will be** exposed to irreparable harm") (emphasis supplied).

*Second*, Plaintiffs offer mere speculation that an injunction is necessary to prevent "actions to further transfer the [Domain] and remove it from this Court's reach" and to prevent "sudden expiration" of the Domain that might "potentially open the door to the Domain" being acquired by someone "outside the jurisdiction of this Court." *See* Doc. 2 at 15; Doc. 20 at 16. Plaintiffs' conjecture and speculation falls well short of satisfying their burden to show a

*likelihood* of irreparable harm, and Plaintiffs have not submitted any evidence for their speculative assertions. Absent any competent evidence, Plaintiffs cannot establish a likelihood of irreparable harm. *See Identity Intel. Grp.*, 2022 WL 17903681, at *3 (no irreparable harm where plaintiff "fail[ed] to provide any such evidence other than its bare assertions of future harm"); *Forefront Dermatology S.C. v. Crossman*, 642 F. Supp. 3d 947, 952 (D. Ariz. 2022) (denying preliminary injunction where plaintiff "failed to point to evidence in the record showing an actual or significant risk that irreparable harm will occur in the immediate future").

*Third*, Plaintiffs allege that the Domains have been returned to non-party Calor, a UK entity, and registered with 123-Reg, a UK company, that—as explained above—is not subject to personal jurisdiction in Arizona. Thus, the requested injunction would not avoid the alleged "harm" because 123-Reg is *already* "outside the jurisdiction of this Court."

*Fourth*, Plaintiffs failed to show that any alleged injury is not compensable with money damages. Crisby alleges, based solely on hearsay, that QLSC terminated the one-week-old JVA after the Calor Domain was removed from Crisby's account. *See* Doc. 18 ¶¶ 31, 48. Prime alleges, based solely on hearsay, that Garbutt and Giordano's proposed new white-label butane business "ended." *See* Doc. 18 ¶¶ 35, 48. Any "damages" related to a hypothetical, prospective new business would necessarily be speculative. *See McAlister v. Gieszl*, 2010 WL 173309, at *6–7 (Ariz. Ct. App. Jan. 19, 2010) (to recover lost profits, a new business "must show with reasonable certainty that the new business would have been feasible, would have yielded a profit, and prove how much profit the business would have realized"). Plaintiffs also made no attempt to explain why they could not use a different domain for their embryonic businesses—indeed, Prime admitted it reestablished its website at butane.org. *See* Doc. 18 ¶ 40, n.6; Doc. 18-1 at Ex. 9. As a result, Plaintiffs failed to show—much less with competent evidence—that a hypothetical further transfer of the Domains would be irreparable. And even if Plaintiffs could somehow show reasonable certainty as to any alleged damages, such losses are recoverable through money damages. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended are

not enough." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (cleaned up) (quoting *Sampson v. Murray*, 415 U.S. 61, 94 (1974)).

*Fifth*, Crisby and Prime delayed over 2.5 months and 3.5 months, respectively, before commencing or joining this action—significantly undermining any purported urgency or threat of irreparable harm.[2]

Plaintiffs failed to show a likelihood of irreparable harm, and the preliminary injunction should be denied regardless of any other factors. *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) ("Because Plaintiffs have failed to show that they are likely to suffer irreparable harm in the absence of preliminary relief, we need not address the remaining elements of the preliminary injunction standard.") (internal quotations and citation omitted).

### D.  The Balance Of Equities Favors 123-Reg

Plaintiffs cannot demonstrate that the balance of equities favors them because the requested injunctive relief is unnecessary and would be ineffective. "When analyzing this element, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Forefront Dermatology S.C.*, 642 F. Supp. 3d at 954 (quoting *Winter*, 555 U.S. at 24).

Plaintiffs assert that the balance of equities "heavily" favors them because an injunction "preserv[es] the status quo." Doc. 2 at 15; Doc. 20 at 16. Not so, as Plaintiffs allege that the Domains were each returned to Calor months ***before*** this action was commenced. *See* Doc. 18 ¶¶ 15, 55. Accordingly, it is Plaintiffs that are seeking to alter the status quo (and potentially impact the Domains' registrant, a nonparty to this action). Moreover, Plaintiffs speculate that, absent an injunction, they "might forever lose their control and ownership interest" in the Domains. *See* Doc. 2 at 15; Doc. 20 at 17. But again, Plaintiffs overlook that 123-Reg is not

---

[2] *See Barton & Assocs. Inc. v. Trainor*, 2020 WL 6081496, at *6 (D. Ariz. Oct. 15, 2020) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *Li v. Home Depot USA Inc.*, 2013 WL 12120065, at *3 (C.D. Cal. Jan. 7, 2013) (three-month delay "implies a lack of urgency and irreparable harm"); *Givemepower Corp. v. Pace Compumetrics, Inc.*, 2007 WL 951350, at *7 (S.D. Cal. Mar. 23, 2007) (two-month "delay in seeking injunctive relief undercuts … argument of immediate, irreparable harm").

subject to personal jurisdiction in this forum and the requested injunction is not enforceable as to 123-Reg.

On the other hand, a preliminary injunction as to 123-Reg would create significant and unnecessary confusion, as it would purport to enjoin the actions of an entity that is not subject to personal jurisdiction in Arizona. Moreover, if the preliminary injunction were entered, it could potentially injure the Domains' registrant, a nonparty to this action. Accordingly, the balance of equities tips against Plaintiffs' unnecessary and ineffective proposed injunctions.

### E. Granting A Preliminary Injunction Is Against The Public Interest

When the impact of an injunction is "limited only to the parties," the public interest is usually a neutral factor. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* Plaintiffs' only statement on this issue is a vague assertion that "the public has a strong interest in holding private parties to their agreements." *See* Doc. 2 at 15; Doc. 20 at 16. But as set forth above, Plaintiffs do not allege that they had any contract with 123-Reg, and it is Plaintiffs that are attempting to evade the terms of their agreements with GoDaddy that foreclose their claims. Moreover, the public has a strong interest in ensuring that registrars can correct errors or mistakes, particularly because the registration function is passive and automated. Plaintiffs' requested relief undermines that ability, and thus would undermine the public interest in a properly functioning domain name registration process. Accordingly, the public interest militates against granting an injunction.

## V.  CONCLUSION

For the foregoing reasons, 123-Reg respectfully request that this Court deny Crisby's Motion for Preliminary Injunction and Prime's Motion for a Temporary Restraining Order.

Dated:  October 29, 2024

**COZEN O'CONNOR**
Jeffrey M. Monhait

By: *s/Jeffrey M. Monhait*
     Jeffrey M. Monhait

Attorneys for Defendants
GoDaddy Inc., GoDaddy.com, LLC,
and 123-Reg Limited

# CERTIFICATE OF SERVICE

The undersigned hereby certifies, under penalty of perjury under the laws of the State of Arizona that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Jeffrey J. Neuman<br>JJN SOLUTIONS, LLC<br>9445 Brenner Ct.<br>Vienna, VA 22180<br>(202) 549-5079<br>jeff@jjnsolutions.com | Isacc S. Crum<br>MESSNER REEVES LLP<br>7250 N. 16th St., Suite 410<br>Phoenix, AZ 85020<br>(602) 457-5059<br>icrum@messner.com |
| Counsel for Plaintiffs | Counsel for Plaintiffs |

SIGNED AND DATED this 29th day of October, 2024 at Philadelphia, Pennsylvania.

COZEN O'CONNOR

By: *s/ Jeffrey M. Monhait*
Jeffrey M. Monhait