1 | Jeffrey J. Neuman (Admitted *pro hac vice*)
Jeff@jjnsolutions.com
JJN Solutions, LLC
9445 Brenner Ct.
Vienna, VA 22180
Telephone: (202) 549-5079

Isaac S. Crum #026510
icrum@messner.com
MESSNER REEVES LLP
7250 N. 16th St. Ste 410
Phoenix, Arizona 85020
Telephone: (602) 457-5059
Facsimile:  (303) 623-0552

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Crisby Studio  AB, a Swedish limited liability company,  Niklas Thorin, a Swedish resident, and Prime Loyalty, a New York limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>GoDaddy, Inc., a Delaware corporation, GoDaddy.com, LLC, a Delaware corporation, and 123-Reg Limited, a UK company,<br><br>Defendants. | Case No. 2:24-cv-02165-SMB<br><br>**PLAINTIFFS CRISBY STUDIO AB, NIKLAS THORIN AND PRIME LOYALTY, LLC'S REPLY TO DEFENDANT 123-REG'S OPPOSITION TO CRISBY'S MOTION FOR PRELIMINARY INJUNCTION AND PRIME'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

## I. INTRODUCTION

Plaintiffs Prime Loyalty, LLC ("Prime"), Crisby Studio AB ("Crisby"), and Niklas Thorin ("Thorin") (collectively, "Plaintiffs") purchased the domain names *Butane.com* and *Calor.com* (the "Domains") through GoDaddy's auction services. Both Domains were previously registered with 123-Reg, a wholly owned subsidiary of GoDaddy, Inc. and sister company to GoDaddy.com, LLC, and both purchases involved nearly identical transactions, differing only in price and post-transfer use. GoDaddy, as 123-Reg's agent, managed the auction and sale, transferring the Domains to Plaintiffs, who then invested significant resources to develop the domains into active businesses.

On May 29, 2024, a GoDaddy sales representative contacted Crisby and Prime, claiming an unnamed client was interested in buying their domains. Plaintiffs responded, clearly indicating that the domains were integral to their businesses and that they were not interested in selling. Despite this, GoDaddy later removed the domains from Plaintiffs' accounts without notice, citing an unverified "error" in the auction process, though Plaintiffs have seen no evidence of this supposed error.

In their response briefs, 123-Reg and GoDaddy deflect responsibility to each other, collectively suggesting that no party is accountable for the tortious conduct, unauthorized seizure, resulting damages, and breaches of contract, including the duty of good faith and fair dealing.

Plaintiffs have met all requirements for injunctive relief, demonstrating a likelihood of success and the need to prevent irreparable harm. Contrary to the Defendants' argument that an injunction would hinder registrars' ability to correct domain registration errors, such an injunction would enhance accountability, requiring registrars to: (i) confirm their right to auction expired domains; (ii) address errors before selling to innocent buyers; and (iii) be held accountable for gross negligence and its impact on business registrants. As with any other party to a contract, Arizona public policy supports holding domain registrars to the promises they make. If domain name registrants are left in constant fear that their domains could be taken away at any time—whether months or

years after registration—irresponsible registrars will be empowered to irreparably harm the security, stability, and resilience of the Internet.

## II. ARGUMENT

### A. **Plaintiffs are Likely to Succeed on the Merits with Respect to Claims 1,2,6, 7, 8, 9, 10, 11 and 12 with respect to Defendant 123-Reg.**

#### 1. Conversion and Trespass to Chattel (Claims 1 and 2)

Arizona law defines trespass to chattel consistent with the Restatement (Second) of Torts ("Restatement") § 217 (1965): "intentionally dispossessing another of the chattel or using or intermeddling with a chattel in the possession of another." *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 330–31 (App. 1988). Dispossession occurs when chattel is taken from another's physical control, Restatement § 221, and intermeddling occurs when physical contact is brought about with chattel in another's possession, Restatement § 217 cmt. e.

In *McCalister v. Loeb & Loeb, LLP,* No. 1 CA-CV 23-0212, 2024 WL 372214, at *7-8 (Ariz. Ct. App. Feb. 1, 2024), the court held that in Arizona, trespass to chattels can occur in the context of digital property and "electronic touching". *See also Whitehead v. Grand Canyon University*, 2024 WL 4436614 (D. Ariz Oct. 7, 2024). Contrary to Defendant's argument, domain names, DNS records, and interfering with ones right to use e-mail are precisely the types of property protected under trespass to chattel.

As shown in *McCalister*, altering electronic records of ownership (in that case patent assignment records), relied on to show ownership of chattel can serve as a basis for a claim of trespass to chattel. *Id.* That is precisely what occurred in this case. As stated in the First Amended Complaint, the domain names *Butane.com* and *Calor.com* ("Domains") were purchased and registered by Plaintiffs through GoDaddy and 123-Reg, which was listed as the Registrar of Record. (*see* WHOIS Records, Doc. 31-1 at 5 and 10 (calor.com); Doc. 38-1 at 4 and 8 (butane.com).). After Defendants' attempts to re-purchase the domains under false pretenses was rebuffed, Defendants forcibly took control of the domains by misusing their registrar authority. Unilaterally removing the domains

2

from Plaintiffs' accounts and *changing* the WHOIS registration documentation. This action deprived Plaintiffs of their ownership and use of the domains.

Defendants executed this transfer by submitting unauthorized information to VeriSign, the domain name registry operator for ".com," and altering the WHOIS records to remove Plaintiffs as owners. Following this, Defendant 123-Reg replaced the content on *Butane.com* with a registrar parking page featuring advertisements and an offer for sale, generating revenue for 123-Reg. Like in *McCalister*, this altering of electronic records of ownership is sufficient to state a claim of trespass to chattel.

### 2. Tortious Interference with Perspective Economic Advantage and Contract (Claims 6 and 7)

A plaintiff asserting a claim for tortious interference must allege " 'the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted.' " *Miller v. Hehlen,* 209 Ariz. 462, ¶ 32, 104 P.3d 193, 202 (App.2005), *quoting Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 427, 909 P.2d 486, 494 (App.1995).

Defendants GoDaddy and 123-Reg actively promote their domain services to businesses, anticipating that domains will be used for professional websites[1]. At the time of their unauthorized seizure of Plaintiffs' domains, Defendants were aware that Plaintiffs were using the domains for legitimate business purposes. (*See* FAC, ¶¶ 44-45.) Plaintiff Prime was developing a branded butane distribution business, advertising services on its website hosted at *butane.com*. Plaintiffs Crisby and Thorin had also entered into a joint venture to create a dating app using *calor.com*. In response to Defendants' earlier inquiry,

---

[1] See for example, www.123-reg.co.uk, which states right on its homepage, "Your own domain name, a stunning website, superfast hosting – all right here. It then quotes Joe Birchley from Making Wood Good, "These days, you need to have a strong online presence and identity…It's taken it up a level from being a hobby that's gone professional, to a professional business." (Last accessed on November 2, 2024).

3

1  framed as interest from a potential buyer, Plaintiffs had informed Defendants of these
2  active business uses. In addition, 123-Reg knew that GoDaddy had sold Plaintiffs the
3  *butane.com* and *calor.com* domains through GoDaddy's auction services. Nevertheless,
4  as described in the Complaint, 123-Reg induced GoDaddy to breach that agreement and
5  to forcibly take bake the domains from Plaintiffs, damaging Plaintiffs as described above.
6        The unauthorized reclamation of Plaintiffs' domains effectively ended these
7  business ventures, resulting in actual damages, and, in the case of Plaintiffs Crisby and
8  Thorin, breached their joint venture agreement with a third-party partner.

      **3.**      **Gross Negligence, Negligence, Negligent Misrepresentation & Estoppel**

10        Under Arizona law, every contract for sale carries an implied warranty by the
11  seller that (1) the title conveyed will be valid and the transfer rightful, and (2) the goods
12  will be free from any security interest, lien, or encumbrance unknown to the buyer at the
13  time of the contract. A.R.S. § 47-2312. *See Billman v. Ace Restaurant Supply Co.*, 5
14  Ariz.App. 56 (1967). Additionally, sellers, including Defendants, have a duty to ensure
15  they possess the goods offered for sale. Under the Arizona Consumer Fraud Act, it is
16  unlawful for a seller to misrepresent material facts in connection with the sale or
17  advertisement of merchandise. *See* A.R.S. § 44-1521, et seq.
18        If Defendants' claim of an "error" causing the unauthorized auction and sale of
19  Plaintiffs' domains is to be believed, Defendant 123-Reg and its agent, GoDaddy,
20  breached this duty of care. Defendants had an obligation to ensure they could convey
21  clear title and ownership of the domains. However, if such an error occurred, Defendants
22  negligently failed to perform adequate due diligence before listing, auctioning, and
23  selling the domains, despite knowing or having reason to know that such breaches would
24  likely harm Plaintiffs.
25        More specifically, Defendants 123-Reg and GoDaddy had a duty to ensure that any
26  domain names listed as expired had, in fact, expired, and to correct any errors before the
27  sale—not months afterward—particularly when they knew or should have known that
28  such breaches would harm Plaintiffs. If Defendants' claim that the domain was auctioned

4

due to their error is to be believed, they have effectively conceded gross negligence at best, and intentional misrepresentation at worst. Reg-123 cannot escape liability by invoking GoDaddy's questionable clickwrap agreement made at the time of purchase, which seeks to disclaim accountability for the pre-contractual conduct that induced the sale. Allowing such a defense would permit Defendants to evade responsibility for pre-contractual misrepresentations and negligent actions that directly harmed Plaintiffs.

Plaintiffs argue that Defendants' position is flawed, as the estoppel claim arises from Defendants' pre-contractual actions that induced Plaintiffs to enter into the purchase agreement, not from conduct governed by any contract between the parties. Although Defendant 123-Reg attempts to pass this off as simply a dispute between Defendant GoDaddy and Plaintiffs, the reality is that Defendant GoDaddy was acting as an agent of 123-Reg when it sold the Domains to Plaintiffs though its aftermarket auction services.

As principal, Defendant 123-Reg may be held liable for the actions of its agent if its conduct led third parties to reasonably believe the agent had authority to act on its behalf. This holds true even if the agent was acting in its own interests. *Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502 (2011). The critical factor is whether the third party's reliance on the agent's apparent authority was reasonable *Miller v. Mason-McDuffie Co. of Southern California,* 153 Ariz. 585 (1987); *Anchor Equities, Ltd. v. Joya*, 160 Ariz. 463 (1989).

Here, Plaintiffs clearly relied on GoDaddy's apparent authority to transfer title of the domains. Further, by permitting Plaintiffs to manage the domains post-purchase (while 123-Reg remained listed as the registrar in the WHOIS records), Defendant 123-Reg effectively ratified the sales and cannot now deny that it authorized GoDaddy to conduct them. *Phoenix Western Holding Corp. v. Gleeson*, 18 Ariz.App. 60 (1972). Even if 123-Reg were to assert that GoDaddy lacked such authority, its inaction led Plaintiffs to reasonably believe GoDaddy was indeed authorized to sell the domains. *Fuqua Homes, Inc. v. Grosvenor*, 116 Ariz. 424 (1977).

5

Under Arizona law, promissory estoppel is barred only when an express contract directly addresses the issue at hand. Here, if Defendants' assertions are accepted, they essentially admit that the domain was mistakenly included in the auction due to a pre-contractual "error." Plaintiffs relied on Defendants' representations before any enforceable contract was formed, if one existed at all. Thus, estoppel is appropriate to hold Defendants accountable for their pre-contractual conduct, addressing the harm caused without conflicting with any contractual claims.

### 4. There is Personal Jurisdiction over Defendant 123-Reg.

Defendant 123-Reg alleges that this Court may not issue a preliminary injunction against it because the court lacks personal jurisdiction over it. Although not technically a Motion to Dismiss based on 12(b)(2). When a defendant asserts a lack of personal jurisdiction in response to a motion for a temporary restraining order (TRO) or a motion for a Preliminary Injunction, the court uses the same legal standard as it would in a motion to dismiss for lack of personal jurisdiction. "The plaintiff need only make a *prima facie* showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). In determining whether the plaintiff has met this burden, uncontroverted allegations in the plaintiff's complaint must be taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (cleaned up).

When no federal statute governs personal jurisdiction, "the district court applies the law of the forum state." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). Arizona exerts personal jurisdiction to the "maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a). Thus, personal jurisdiction under Arizona law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

Under the Due Process Clause, "a nonresident's physical presence within the territorial jurisdiction of the court is not required, [but] the nonresident generally must have certain minimum contacts . . . [so as to] not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (cleaned up). A court may assert general or specific jurisdiction over a nonresident defendant. *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997). General jurisdiction exists when there are "continuous and systematic" contacts with the forum state, whereas specific jurisdiction exists when the controversy arises from or is related to the defendant's contact with the forum state. See *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984).

As outlined in Plaintiffs' Replies to GoDaddy's opposition to both Crisby's Motion for a Preliminary Injunction and Prime's Motion for a Temporary Restraining Order, substantial evidence supports both specific and general jurisdiction over 123-Reg. While Defendant argues that Plaintiffs have failed to show sufficient Arizona contacts for personal jurisdiction, it asks the Court to disregard Plaintiffs' evidence rather than directly addressing it. Defendant's failure to rebut this evidence effectively concedes that such contacts do exist.

More specifically, Defendant's contacts with Arizona are "so constant and pervasive as to render it essentially at home" in the state. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). Contrary to Defendant's assertions, Plaintiffs' argue that 123-Reg operates as an alter ego of GoDaddy, which exerts substantial control over 123-Reg, establishing general jurisdiction. Notably: (1) 123-Reg is a wholly owned subsidiary of GoDaddy, Inc., (2) One of 123-Reg's two directors is also a GoDaddy officer (*see* Doc 37, Ex. R1); (3) 123-Reg's UK filings state they represent the "GoDaddy Inc. group of companies, which includes 123-Reg Limited" and align with GoDaddy's strategic reporting (*see* Doc 37, Ex. R2), (4) 123-Reg's EU compliance disclosures use data for the GoDaddy group (Doc 37 Ex. R3); (5) GoDaddy manages 123-Reg's technical and operational services, completing a full migration by the end of 2023 (Doc 37, Ex. R4);

7

(6) GoDaddy controls 123-Reg's ICANN accreditation relationship with staff based in Arizona (Doc 37, Ex. R5); (7) GoDaddy directs 123-Reg's communications and employment decisions (*see* Doc 37, Ex. R6 and R7) (8) GoDaddy exclusively auctions 123-Reg's expired domain names (including the Domains) presumably under an Arizona governed agreement[2].

These facts suggest that 123-Reg and GoDaddy operate as a single entity, allowing the Court to exercise general jurisdiction over 123-Reg, as in *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 447–48, (1952). *See also Daimler AG v. Bauman,* 134 S. Ct. 746, 755–56 (2014) (summarizing *Perkins*). GoDaddy administers 123-Reg's expired domain auctions in Arizona, where GoDaddy's systematic and continuous contacts have generated substantial interstate business. 123-Reg benefits from Arizona's laws, including court access for rights enforcement. This case arises directly from these activities. Upon information and belief, 123-Reg sends expired domains to Arizona for auction, receiving a portion of proceeds under an interparty agreement likely governed by Arizona law, which limited discovery can confirm.

Moreover, even if general jurisdiction is not established, specific jurisdiction exists. Contrary to Defendant's claim that "the only relevant acts alleged regarding 123-Reg—the registration of Domains—occurred in the UK," Defendant overlooks that 123-Reg submits all of its expired domain names to GoDaddy in Arizona for auction. Defendant also disregards publicly available documentation admitting that GoDaddy in Arizona provides the "internal platforms and data centers supporting selected products in The Netherlands, Singapore & USA (e.g., Hosting and Server products, Authentication, Network & DNS Services)" (Doc 37, Ex. R3 "Annex 1: Sub-processor List).

Evidentiary discovery will reveal that (i) Defendant's business dealings with GoDaddy constitute purposeful availment of Arizona's business privileges, *see Inter123*

---

[2] Although not disclosed by Defendant GoDaddy, on September 26, 2024, 123-Reg updated its official registered address to Studio 4th Floor, Parts C&D, East West Tollhouse Hill, Nottingham, England NG1 5FW, which is the same address as GoDaddy's UK office. *See* Reply Ex. R8.

8

*Corp. v. Ghaith*, 2014 WL 1343508, at *2-3 (D. Ariz. Apr. 4, 2014) (holding that Plaintiff purposefully availed itself of Arizona's business privileges); and (ii) Plaintiffs' claims would not have arisen "but for" these contacts[3]. Specifically, if an "error" occurred as Defendant GoDaddy claims (acting as 123-Reg's agent), then (a) the error likely originated in Arizona, (b) it was committed by GoDaddy as 123-Reg's agent in Arizona, or (c) it resulted from 123-Reg's actions (or a former registrant's failure to renew) leading 123-Reg to direct GoDaddy in Arizona to reclaim the Domains. In any case, Plaintiffs' claims arise directly from GoDaddy's actions in Arizona on behalf of 123-Reg.

While Plaintiffs cannot yet specify which scenario applies without discovery, it would be unjust for Defendants to benefit from withholding information regarding the alleged "error."

### 5. Proper Scope of a Reply

Defendant contends that, although it raised the issue of lack of personal jurisdiction for the first time in its Response Brief, the Court should bar any rebuttal on this point in Plaintiffs' Reply, citing cases that prohibit introducing new issues in a reply.

However, Plaintiffs are not introducing new arguments; they are simply responding to Defendant's jurisdictional defense, which was first raised in opposition to Plaintiffs' motion for a preliminary injunction rather than in a motion to dismiss. Denying Plaintiffs the opportunity to counter this critical, potentially dispositive defense would unfairly restrict their right to challenge 123-Reg's jurisdictional claim. *See El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040-41 (9th Cir. 2003) (finding no abuse of discretion in permitting an argument introduced in a reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (district court may consider new evidence in a reply if the adverse party has an opportunity to respond).

---

[3] In *Inter123 Corp.*, the court held that the "but for" prong was not satisfied because GoDaddy's role as a registrar was unrelated to the contract dispute between the plaintiff and an unrelated defendant. In contrast, here, Plaintiffs' claims directly arise from Defendants' collective actions in auctioning and subsequently reclaiming the Domains within Arizona. 2014 WL 1343508.

9

In this case, Plaintiffs presented these arguments in their Replies to GoDaddy's opposition to both Crisby's Motion for a Preliminary Injunction and Prime's Motion for a Temporary Restraining Order. Defendant 123-Reg had ample opportunity to address Plaintiffs' arguments and evidence regarding both general and specific personal jurisdiction in its Response Brief but largely chose to ignore them. This failure to engage substantively with the evidence suggests an implicit concession that sufficient contacts do, in fact, exist.

### 6. The Balance of Equities and the Public Interest Weigh Heavily in favor of a Preliminary Injunction

The balance of equities and the public interest strongly favor the Plaintiffs, as outlined in *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008). The requested preliminary injunction merely would preserve the status quo, preventing Defendants from taking actions contrary to the Agreement or infringing on Plaintiffs' ownership of the Domains, and importantly keeps the *res*—namely, the Domains—within the jurisdiction of the Court.[4] Courts have upheld the public interest in enforcing private agreements, as seen in *Epic Games v. Apple Inc.*, 2020 WL 5073937 (N.D. Cal. 2020). Defendants face no legitimate harm, as the relief sought only safeguards Plaintiffs' existing rights. Without injunctive relief, Plaintiffs may irreparably lose their ownership interests. Notably, this Court recently granted similar relief in *True Names Ltd. v. GoDaddy Inc.*, 2022 WL 4121401 (D. Ariz. 2022), where a preliminary injunction was issued, affirming that "serious questions going to the merits" and a hardship balance favoring the movant justify such relief.

---

[4] Defendant 123-Reg asserts that Plaintiffs alleged the Domains were returned to the former registrant. This is incorrect. Defendant Prime received an email from GoDaddy stating that one of the Domains was supposedly returned to the former registrant, but this has never been confirmed, nor have any Defendants verified that this actually occurred. In fact, the WHOIS records submitted by Defendants (Docs 26, Ex. B and 28, Ex. 1) show the Domains registered under Domains by Proxy, a GoDaddy entity. Plaintiffs therefore request that the WHOIS records continue to reflect this information during the litigation and that no changes be made to those records.

10

### III. CONCLUSION

Plaintiffs are likely to succeed on the merits and the issuance of an injunction to maintain the status quo is not only warranted but is the only responsible course of action to maintain this court's jurisdiction over the disputed Domain.

DATED: November 5, 2024,

/s/ Isaac S. Crum
Isaac S. Crum, #026510
icrum@messner.com
MESSNER REEVES LLP
7250 N. 16th St. Ste 410
Phoenix, Arizona 85020
Telephone: (602) 457-5059
Facsimile: (303) 623-0552

Jeffrey J. Neuman (*pro hac vice* forthcoming)
Jeff@jjnsolutions.com
JJN Solutions, LLC
9445 Brenner Ct.
Vienna, VA 22180

*Attorneys for Plaintiffs*